THE PEOPLE OF THE STATE OF NEW YORK ex rel. IROQUOIS
    DOOR COMPANY, Relator, *v.* WALTER H. KNAPP and Others,
    Tax Commissioners, and Composing the State Tax Com-
    mission of the State of New York, Respondents.

Third Department, January 8, 1919.

**Tax — franchise tax on manufacturing and mercantile corpora-
tions — Tax Law, section 219-j, construed — amendment of
statute to cure unfairness of former act — said amendment
although retroactive does not impair contract rights — constitu-
tional law.**

Section 219-j of the Tax Law, relating to the annual franchise tax on manu-
    facturing and mercantile corporations, which provided that if any such
    corporation shall pay taxes on personal property or capital stock assessed
    in any tax district in the year 1917 the corporation should be entitled
    to credit for the amount of such taxes so paid on its account for taxes
    first assessed against it under this article by the Tax Commission, etc.,

was unfair in those municipalities whose fiscal year was not coterminous with the calendar year and to cure such inequality said section was amended, in part, by chapter 271 of the Laws of 1918, so that in such tax districts credit should only be allowed for the amount of such part of the taxes so paid locally as the portion of the year 1918 for which such taxes shall have been paid, bears to the entire calendar year.

As such amendment to section 219-j was expressly made retroactive, a corporation in the city of Buffalo, where the fiscal year begins July first, is not entitled to a credit on its franchise tax for more than one-half of the local tax paid to said city in 1917.

While the State may by contract exempt a party from taxation and the obligation of such contract, if made, becomes binding, it is never to be assumed that the State has by any act fettered its power of taxation in the future unless it so clearly appears.

Section 219-j of the Tax Law as it stood in 1917 did not create a contract between the State and manufacturing or mercantile corporations, and, hence, there was no impairment of the rights of such corporations, by the amendment to said section made by chapter 271 of the Laws of 1918. And this is true whether or not a corporation had in the meantime paid the franchise tax contemplated by the act of 1917.

CERTIORARI issued out of the Supreme Court and attested on the 29th day of June, 1918, directed to Walter H. Knapp and others, commanding them to certify and return to the clerk of the county of Albany all and singular their proceedings had in refusing an appropriate credit on the franchise tax assessed against the relator for the year 1918.

*Van Arsdale, Hofheins & Keeney* [*John A. Van Arsdale* of counsel], for the relator.

*Merton E. Lewis, Attorney-General* [*Harold J. Hinman* and *Claude T. Dawes* of counsel], for the respondents.

COCHRANE, J.:

Chapter 726 of the Laws of 1917 radically changed the method of determining the annual franchise tax on manufacturing and mercantile corporations. It amended the Tax Law (Consol. Laws, chap. 60; Laws of 1909, chap. 62) by inserting a new article to be known as article 9-a. It provided that the franchise tax payable annually in advance should be computed on the basis of three per centum of the net income of the corporation for its fiscal or the calendar year next preceding, upon which income such corporation was required to pay a Federal tax (§§ 209, 215).

Section 219-j provided that such corporation should not be taxed on its capital stock under section 12 of the Tax Law nor be required to pay the franchise tax imposed by section 182 of that law, and concludes as follows: " But if any manufacturing or mercantile corporation shall pay taxes on personal property or capital stock assessed in any tax district in the year nineteen hundred and seventeen, such corporation shall be entitled to credit for the amount of such taxes so paid on its account for taxes first assessed against it under this article by the Tax Commission, not exceeding, however, the amount of such first assessment."

The manifest purpose of this last provision in section 219-j was to prevent excessive or duplicated taxation. It was deemed unfair that if a corporation had in the year 1917 paid taxes applicable to the year 1918 it should again be required to pay a full franchise tax for the latter year, and provision was, therefore, made for a credit on the latter tax of such amounts as had been paid locally in the year 1917. But obviously the Legislature overlooked the fact that the fiscal year in some municipalities was not coterminous with the calendar year. In the city of Buffalo, where the relator is located, the fiscal year begins July first. Its city tax paid in the year 1917 was applicable to the fiscal year beginning July first of that year. To allow, therefore, a credit on the relator's franchise tax for 1918 of the full amount of its city tax paid in 1917 would be within the letter of section 219-j, but it nevertheless would constitute an unjust discrimination in favor of the relator. The act was unduly favorable to corporations, including the relator, which had paid local taxes for fiscal years expiring before the close of 1918, and was of course correspondingly unfair to other taxpayers. The relator, as permitted by the act of 1917, claimed prior to January 1, 1918, credit for the full amount of the city tax thus paid. The Tax Commission refused to allow credit for more than one-half of this amount, apparently anticipating the remedial legislation which followed, being chapter 271 of the Laws of 1918, which became a law on April nineteenth of that year, and which amended section 219-j in part so as to read as follows: " But if any corporation taxed under this article shall have paid or shall hereafter pay taxes on

personal property or capital stock assessed as specifically provided in this section, for any part of the calendar year nineteen hundred and eighteen, such corporation shall be entitled to credit, with interest, as hereinafter provided, for the amount of such part of the taxes so paid locally as the portion of the year nineteen hundred and eighteen for which such taxes shall have been paid bears to the entire calendar year." The amendment of section 219-j was expressly made retroactive so as to be effective from the date of the original enactment of article 9-a of the Tax Law. It follows that, if the amendment of 1918 is valid, the relator is not entitled to a credit on its franchise tax for more than one-half of the local tax paid to the city of Buffalo in 1917, and the determination of the Commission to that effect is correct. That is the question here presented by this proceeding.

It is not claimed by the relator that the act of 1918 has not been properly construed by the Commission nor that if the provisions of that act had been originally enacted by the act of 1917 it would be objectionable. But the contention seems to be that by the act of 1917 a contract was created between the State and the relator which was impaired by the subsequent enactment of 1918.

Undoubtedly the State may by contract exempt a party from taxation and the obligation of such a contract if made becomes binding. But " it is never to be assumed that the State has, by any act, fettered its power of taxation in the future, unless it appears with irresistible clearness that the enactment was intended to be in the nature of a private contract as distinguished from a mere act of general legislation." (*People ex rel. Gallatin National Bank* v. *Commissioners,* 67 N. Y. 516; *People ex rel. Cunningham* v. *Roper,* 35 id. 629; *People ex rel. Davies* v. *Comrs. of Taxes of N. Y.,* 47 id. 501; *Rector, etc., of Christ Church, Philadelphia* v. *County of Philadelphia,* 24 How. [U. S.] 300.)

An unusually clear and comprehensive statement of the law pertinent to this question is found in *People ex rel. Cunningham* v. *Roper* (35 N. Y. 629, 635) as follows: " It is true that the State may, if it will, within the limits prescribed in its organic law, enter into private contracts with its citizens, by which the people and the government are forever bound;

but we are never to construe a general statute as embracing such a purpose, when it is obvious that it was designed only as an expression of the legislative will for the time being, in a matter of mere municipal regulation. When this is the object of the law, those who act upon the faith of its provisions, do so with a reasonable assurance, indeed, that it will not be modified or repealed until such action shall be required, in the judgment of the Legislature, by the general interest of the community; but with notice that it is subject to revocation by the State, whenever the public exigencies may demand. Such a repeal involves no breach of obligation, in the sense of the Federal Constitution; for the faith reposed is on the stability of a general law, and not on the efficacy of a legal contract."

I can discover no element of a contract in the act of 1917. Such legislation was not personal to the relator. It was part of the General Tax Law of the State. Its provisions were applicable to all corporations falling within its purview. The State by that legislation was not entering into a contract with the relator or any other corporation. It was merely exercising its taxing power. Inadvertently an unjust discrimination in the matter of taxation was made in favor of the relator and certain other corporations. When it was discovered that an unfair discrimination had been made in favor of the relator and other corporations, such unfairness was ·corrected by the act of 1918. I do not see that it makes any difference whether or not the relator had in the meantime paid the franchise tax contemplated by the act of 1917. Unless there was a contract with the relator, which very clearly there was not, the State by virtue of its taxing power could correct a manifest injustice and prevent the relator from escaping in part a single taxation which was the effect of the act of 1917 as applied to the relator. The relator has given up or yielded no advantage nor has it been prejudiced in any particular nor is it in any different position than it would have been if the act of 1917 had originally been enacted as it was subsequently amended in 1918. It is urged that the statute (§ 219-d) contemplates the assignability of the credit to another corporation liable to pay taxes under article 9-a, and that this indicates a contractual obligation on the part of the

State. As between the State and the original owner of the credit the assignability thereof is permitted as a privilege or favor and is not granted as a right. It is not necessary to decide what the effect of the amendment of 1918 might be on a credit previously assigned. That question does not exist in this case.

It has been held where a transfer tax has been paid upon an estate of a deceased person that the State had power to impose an additional tax on the same estate notwithstanding the argument against such additional tax that the law authorizing the first tax constituted a contract that no further tax. should be imposed. (*Matter of Vanderbilt*, 50 App. Div. 246, 250; affd., on opinion below, 163 N. Y. 597.)

In *Carpenter* v. *Commonwealth of Pennsylvania* (17 How. [U. S.] 456) it was held that the State could impose a tax upon property belonging to an estate actually in process of settlement and not taxable at the time of the death of the decedent. It was said in that case that no more pointed words could have been selected to make the act retroactive but nevertheless it was determined that the act violated no constitutional provision.

The determination should be confirmed, with fifty dollars costs and disbursements.

Determination unanimously confirmed, with fifty dollars costs and disbursements.