**STANDARD OIL CO. OF NEW JERSEY et al. v. GRAND RAPIDS TRUST CO.**

**GRAND RAPIDS TRUST CO. v. STANDARD OIL CO. OF NEW JERSEY et al.**

**Nos. 7349, 7350.**

Circuit Court of Appeals, Sixth Circuit.

July 2, 1938.

Rockwell T. Gust and T. Gordon Scupholm, both of Detroit, Mich. (Butzel, Eaman, Long, Gust & Bills, Rockwell T. Gust, and T. Gordon Scupholm, all of Detroit, Mich., on the brief), for Standard Oil Co. and others.

Edgar Johnson, of Grand Rapids, Mich. (Travis, Merrick & Johnson, of Grand Rapids, Mich., on the brief), for Grand Rapids Trust Co.

Before HICKS, Circuit Judge, HAMILTON and SWINFORD, District Judges.

HAMILTON, District Judge.

This case is before us on two appeals. The appellants, the Standard Oil Company of New Jersey and the Draycott Mills, Inc., creditors of the receiver, seek to reverse a decree of the District Court insofar as their exceptions were overruled to the final settlement of the accounts of the appellee, the Grand Rapids Trust Company, receiver of the H. M. Reynolds Shingle Company and it, as cross-appellant, seeks to reverse the decree insofar as it disallows credit items in its final account.

On November 19, 1925, Grand Rapids Trust Company was appointed operating

receiver of H. M. Reynolds Shingle Company of Grand Rapids in an action of the Staso Laminated Slate Company, an unsecured creditor of the Shingle Company, for many years successful manufacturer of asphalt shingles and roofing material. At the time of appointment, the trust company was also trustee under a trust mortgage of October 15, 1922, on which there was a balance due of $170,000, and accrued interest. There was also outstanding a junior mortgage in the principal amount of approximately $100,000. The receivership operations resulted in a profit to and including 1927. A loss of approximately $70,000 was sustained in 1928 and $150,000 in 1929, and on December 18, 1929, operations ceased.

The appellant, Standard Oil Company of New Jersey sold to the receiver during the period of operation materials in the amount of $242,475.63, and there was due it $8,915.09 when operations ceased. Appellant Draycott Mills, sold supplies to the amount of $343,213.65 of which there remained unpaid $6,118.47.

The objecting creditors filed exceptions to the receiver's final accounts and prayed that the following sums be disallowed as credit items.

1. $100,110.53 principal and interest paid on first mortgage bonds.

2. $26,559.38 improvements and betterments on mortgaged property.

3. $28,211.28 preferences to receiver and its creditor, the Old Kent Bank.

4. $41,000 fees to receiver.

(1) Beginning October 2, 1926, and annually thereafter, down to and including October 15, 1929, on ex parte petitions the receiver was authorized to pay all interest and maturities on the first mortgage bonds.

From April 15, 1926, to April 12, 1929, the receiver charged its accounts with payments on the mortgage indebtedness at date of maturity and credited its trustee accounts and made disbursements therefrom to the owners of the mortgage bonds which was reported to the Court annually. Up to the year 1928, these payments were made during apparently profitable operations. There were some payments made during a period of operating losses but with the knowledge and without objection of the principal creditors and while they were insisting on the continuance of the business for the purpose of its sale as a going concern.

After the receiver had petitioned the Court to discontinue operations, it paid to itself as trustee on October 15, 1929, $3,850 interest on the bonds and $99.06 trustee's fees, to which no exceptions were filed until July 16, 1934. The lower court found all of these payments were made in good faith and solely for the purpose of avoiding default and precipitation and cessation of the business by interference from the bondholders. The appellants attack them on the following grounds:

A. That they were illegal and resulted in the insolvency of the receivership.

B. That because of the dual capacity in which the appellee was acting, it preferred itself as trustee.

C. That all payments during 1928 and 1929 were made while large operating losses were being sustained and therefore were improper.

D. That $3,850 interest on the bonds and $99.06 fees paid to the appellee as trustee by it as receiver, were made after it had petitioned the court to discontinue operations because of losses.

E. That the appellee owned in its own right, $8,500 of the bonds which it improperly paid itself out of free receivership assets.

We find it unnecessary to consider the objections raised by the appellants. They are estopped at this late date to question the orders of the lower court directing the receiver to make the disbursements to the bondholders. The Court had possession of the fund, and with it went the power of disbursements, lawful or unlawful. The order of payment and compliance therewith by the receiver and its report to the Court of its acts with notice to creditors, was final. No exceptions were filed until nearly five years after the disbursements were made. Compare Trustees of Internal Improv. Fund v. Greenough, 105 U.S. 527, 538, 26 L.Ed. 1157; Krietmeyer v. Hemphill, 5 Cir., 19 F.2d 513; Ruggles v. Patton, 6 Cir., 143 F. 312; Texas Company v. International & G. N. Ry. Co., 5 Cir., 237 F. 921; Pianta v. H. M. Reich Company, 2 Cir., 77 F.2d 888.

(2) The receiver between January 31, 1926, and September 30, 1929, expended $26,557.38 on maintenance, improvements and betterments. Appellants seek a disallowance of all these expenditures on the ground they resulted in lasting improvements on the mortgaged property and were

of no substantial benefit to the unsecured creditors. There is no evidence in the record concerning these expenditures except an itemized statement showing date and name of the payee. An examination of the account leaves the impression they were necessary to keep a plant of this type and size in operation. They were shown in the reports of the receiver and no exceptions were taken by the creditors until long after made. The lower court properly sustained them.

■ (3) On December 3, 1925, the Court on ex parte petition of the receiver authorized it to advance money out of its own funds to meet current operating expenses, the balance so advanced at no time to exceed $15,000. On March 3, 1926, on ex parte petition the Court authorized the advancement by the receiver of its funds for the purchase of raw materials, the balance at no time to exceed $35,000. Pursuant to this authority the receiver at various times made advancements and also procured loans from the Old Kent Bank, which were used in the operations of the business. At the time operations were discontinued in December 1929, the receiver had due it for advancements $25,000 and in the latter part of 1930 it made a further advancement of $252.10. There was due the Old Kent Bank for advancements $15,600. The receiver owed to other creditors $43,147.90 and approximately $8,300 taxes on personal property. It paid to itself, after the cessation of operations, $25,252.10 and to the Old Kent Bank, $15,600. It made no payments to other creditors. The lower court found the receiver was justified in paying its creditors according to the custom prevailing in the usual course of business so long as it believed in good faith, all would be paid in full. Apparently on August 1, 1929, there were assets on hand sufficient to pay all creditors. On April 3, 1930, the Master filed his report showing that a purchaser could not be found who was willing to pay any substantial sum for the receiver's assets. Based on this fact, the lower court charged the receiver with all payments made to itself or the Old Kent Bank subsequent to that date which resulted in a disallowance of $12,640.82. From this order the objecting creditors have appealed and the receiver Grand Rapids Trust Company has cross appealed.

Early in 1929, it appeared impossible to continue to operate the business as a going concern and by September it was definitely known that large losses would be sustained and thereafter no further business was done except processing for sale raw materials on hand. The appellants and many other creditors were paid in full for all merchandise sold to August 1, 1929.

From December, 1929, the receivership was insolvent, and thereafter in liquidation. Receivership assets, like those of corporations, are held as a trust fund for the benefit of creditors, and during solvency and operation, one creditor may be paid in advance of another, but when operations are discontinued, the doctrine that equality is equity must govern the receiver —and no liens or preferences should be recognized unless satisfactorily established. The operation of this rule is not affected by the fact that debts may have accrued at different times or that some creditors are paid in full to the exclusion of others during apparent solvency and continued operation. Compare Penn. Steel Company v. New York City R. Co., 2 Cir., 198 F. 778; Van Raalte v. Enterprise Transportation Company, 1 Cir., 169 F. 606.

From January 1, 1930, all payments made by the receiver to creditors of the same class should have been prorated and it should be charged with payments to itself and the Old Kent Bank, not made on this basis after that date.

■ (4) During the period of receivership, the receiver was paid annually for its services. All allowances were approved by the Court on petition of the receiver after notice to creditors. The first order of allowance was entered August 27, 1926, and thereafter down to and including November 29, 1929, $10,000 annually was paid on Court order, $4,400 was approved by order of March 16, 1932, and $2,429.29 of this sum has not been paid. The aggregate sum paid was $41,000.

The appellants filed exceptions and objections July 16, 1934, claiming they should be disallowed because: (1) the business was operated at a loss; (2) the receiver had failed to file proper reports; (3) had paid itself fees in advance of an order of allowance; (4) had placed the management of the business in incompetent hands; (5) had expended large sums in permanent improvements of physical assets; (6) had liquidated the inventories at a substantial loss and had bought material and supplies on credit.

We find it unnecessary to express any opinion on the objections and exceptions of the appellants. They were filed too late. Compare Ruggles v. Patton, supra. The cross appeal is dismissed. The decree of the District Court being erroneous to the extent here indicated and no farther, is modified accordingly, the cause being remanded for further proceedings consistent with the opinion of this Court.

HICKS, Circuit Judge (concurring in part).

I concur in the opinion of the court with this exception:

I think the receiver should not be required to account for any part of the advancements made by it or of the payments made upon the loan from the Old Kent Bank. Advancements up to $50,000 were authorized by the court and were used in the operation of the business carried on at the instance and for the benefit of creditors. I can see no distinction, in equity, in whether they were made by the receiver out of its own or borrowed money.