## CITY OF NEW YORK v. RASSNER.

### No. 234.

Circuit Court of Appeals, Second Circuit.

April 21, 1942.

704

Sol Charles Levine, of New York City (William C. Chanler, Corp. Counsel, Morris L. Heath, and Samuel J. Warms, all of New York City, on the brief), for claimant-appellant.

Jacob Frummer, of Brooklyn, N. Y., for appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, C. E., Circuit Judge.

This case calls for a determination of the effect in bankruptcy of the New York City Sales Tax Law, Administrative Code, c. 41, Tit. N, § 41—2.0, subd. e, as amended by Local Law No. 79 of 1940, page 354, which makes a vendor a "trustee" when collecting the sales tax from vendees. The city asserts that, by virtue of its status as a beneficiary, its claim for taxes collected during the continuation of a business under bankruptcy is for direct restitution from any funds of the estate, and thus comes ahead even of expenses of administration. The trustee of the bankrupt maintains that the city's claim is only on a parity with the claims of administration creditors generally to a fund insufficient to satisfy all such claims. The referee below so held; and on a petition to review, the district court upheld the referee.

The facts are that on January 19, 1939, New Bedford Rest., Inc., filed a petition for an arrangement, under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. The debtor was permitted to remain in possession and to conduct the business until

November 14, 1939, when it was adjudicated a bankrupt. At that time Mr. Rassner was appointed trustee and received $7.50, the only assets in cash held by the debtor. Subsequently, aside from a couple of small refunds, the only money obtained was from a public auction of the chattels of the debtor. The greater part of the sum realized, $4,272.95, was made possible only because of the trustee's activities in invalidating certain mortgages covering the chattels. There now remains approximately $3,100 in the trustee's hands.

The city filed a claim for sales taxes, of which $2,182.94 had been collected during the period of operation of the business by the debtor in possession. This was reduced to $1,932.84 by the referee, affirmed by the district court, by deducting a payment of $250 which had been made by the debtor during the period of operation and applied by the city to the earlier unpaid taxes. We see nothing wrong in this reduction. It would have been improper to make a payment on taxes on sales prior to the date of the petition, In re Lambertville Rubber Co., 3 Cir., 111 F.2d 45, and a refund could have been required, In re Wil-Low Cafeterias, Inc., D.C.S.D.N.Y., 35 F. Supp. 965. In our view of the case it makes no difference whether the claim is reduced because payment was unauthorized or because it was on account of current taxes. As to the remainder of the claim, the referee ruled that the city must share pro rata with other administration expenses, either because the fund created by the trustee came through the creditors in whose stead the chattel mortgages were invalidated or because the city could not trace the trust fund. On review, the district court accepted both reasons and added a third one—that the city's claim was not for a trust fund, but for taxes, In re New Bedford Rest., Inc., D.C.E.D.N.Y., 40 F.Supp. 288, citing City of New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333. We do not think the trustee can sustain the conclusion he urges on any of these assigned reasons, but believe rather that the trustee must restore the trust funds depleted during administration.

We turn first to the argument based on the Feiring case. The Supreme Court held that the city has a tax claim entitled to priority under § 64, subd. a(4), of the Bankruptcy Act, 11 U.S.C.A. § 104, subd. a(4). It had no occasion to, and did not in any way, consider any other relationship between vendor and city. It considered only the problem where the vendor had neglected to pass on the tax, though it is not likely that this is an important feature of the case. See United States v. State of New York, 62 S.Ct. 712, 714, 86 L.Ed. ——. The important point is that the Court recognized the dual capacity of the vendor. "It is not," the Court said, "any the less a tax laid on the seller because the statute places a like burden in the alternative on the purchaser or because it affords to the seller facilities of which he did not avail himself to pass the tax on to the buyer." City of New York v. Feiring, supra, 313 U.S. at page 287, 61 S.Ct. at page 1030, 85 L.Ed. 1333. That in recognizing this dual position of the seller the Court spoke of "passing" on the tax, and for our case here perhaps put the cart before the horse, is hardly significant, for the Court was clearly referring to the ultimate burden or incidence of the tax, not to the time of its collection. That case arose before the city amended the tax statute to make the vendor expressly a "trustee."[1] Quite possibly he was so anyhow; at any rate under the present statute, the "alternative" recognized by the Court is clearly an alternative of being a taxpayer or a trustee. Since the records of the debtor disclose that the tax was collected, the city may rest on its status as a beneficiary of a trust. In re E. Goldberger, Inc., D.C.E.D.N.Y., 32 F.Supp. 615.

If the city claims as a beneficiary of a trust, the bankruptcy trustee argues that it must trace the trust property. We may concede that a beneficiary must trace trust funds where mingling takes place prior to bankruptcy. See 3 Moore's Collier on Bankruptcy, 14th Ed. 1941, 817, and authorities cited; T. W. S., 32 Yale L. J. 267. But the situation is different where the trust relationship arises subsequent to bankruptcy. When the petition was filed and the debtor continued operation, it acted as an officer of the bankruptcy court. Bankruptcy Act, §§ 342, 343, 11 U.S.C.A. §§ 742, 743. It was subject "at all times to

---

[1] Prior to 1938, Sec. 2 required the tax to "be paid by the purchaser to the vendor, for and on account of the City of New York." The section now reads, "and shall be paid by the purchaser to the vendor as trustee for and on account of the city, and the vendor shall be liable for the collection thereof and for the tax." Administrative Code, § N41—2.0, subd. e, as amended by Local Laws 1940, p. 354.

706

the control of the court." § 342. And in operating the business it had to have "authorization by and subject to the control of the court." When the debtor was displaced by the bankruptcy trustee, there was no break in the continuity in relationship, for the order of adjudication related back and the original petition for an arrangement became the vital date. Bankruptcy Act, § 302, 11 U.S.C.A. § 702; cf. Lockhart v. Garden City Bank & Trust Co., 2 Cir., 116 F.2d 658, 660. The trustee in bankruptcy, so far as outsiders are concerned, must proceed subject to any claims available against the debtor in possession.

 If the debtor in possession failed to segregate the taxes collected from vendees, it did so under the control of the court. The city could hardly seek fine or imprisonment of the debtor or its officers for failure to segregate funds—assuming the penal provisions, Administrative Code, c. 41, Tit. N, § 41-17.0, as amended by Local Laws 1940, p. 362, go that far—because the status of the debtor as under court control would be a defense.[2] The most that the city could seek would be a court order directing the debtor in possession to keep sales tax receipts separate from the ordinary transactions of the business, in other words, to obey the sales tax law. If we hold that the city must now trace the funds, we state in effect that any beneficiary of a trust which is handled by an officer of a bankruptcy court must always protect himself by petitioning in advance for proper administration of the trust. Thus stated, it can be seen that we would be condoning improper action by a trustee so long as he could successfully get away with it.[3] As a court of equity, a bankruptcy court can hardly proceed on this assumption. It is the duty of the bankruptcy court in distributing an estate to do so equitably. Pepper v. Litton, 308 U.S. 295, 304 ff., 60 S.Ct. 238, 84 L.Ed. 281.

Protection of a beneficiary of a trust whose funds have been misappropriated is a proper part of equitable administration. Standard Oil Co. of Kentucky v. Hawkins, 7 Cir., 74 F. 395, 33 L.R.A. 739; Hood v. Hardesty, 4 Cir., 94 F.2d 26, certiorari denied 303 U.S. 661, 58 S.Ct. 765, 82 L.Ed. 1120; Shipe v. Consumers' Service Co., D.C.N.D. Ind., 28 F.2d 53; In re Kenney & Greenwood, Inc., D.C.Me., 23 F.2d 681; Ex parte Simmonds, 16 Q.B.D. 308. It is hardly an answer to these cases to say that in them the general estate has been augmented by the proceeds; for that happened no more or no less in this case unless we assume, without evidence and contrary to all presumption, that here the debtor made off with the funds.

 Of course, an overriding policy, of the Bankruptcy Act could prevent preferred satisfaction of even trust claims. Just as the question of what is a "tax" under § 64, subd. a(4), is a federal one, City of New York v. Feiring, supra; State of New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284, so the question of proper distribution of estates and proper priorities is federal, Pepper v. Litton, supra, except in so far as the Bankruptcy Act specifically makes state law controlling. Cf. Strom v. Peikes, 2 Cir., 123 F.2d 1003. Nevertheless, barring any strong policy in the Bankruptcy Act, state law determines what is and what is not a trustee. If New York City wishes to obtain a preferred position by making all vendors trustees, it may do so. And so long as the Bankruptcy Act recognizes state rules as to trustees, the city will succeed. The only applicable section of the Act is 64, subd. a(1), which puts all expenses of the liquidation of an estate first in the hierarchy of priorities. Here the trustee has to claim that, since all expenses are treated alike in § 64, subd. a (1), the city gets an inequitable priority by

---

[2] We do not mean that the debtor and its officers have complete immunity. We mean only that the question of segregation is an element in the ultimate determination of the status of the city's claim. The city could expect no more than a judicial determination that it would be paid first, and paid in full perhaps. It could not obtain its money except by court order. Segregation, therefore, would be immaterial. Penalties for failure to file returns, non-payment, and the like, are, of course, covered by the Act of June 18, 1934, 28 U.S.C.A. § 124a. Boteler v. Ingels, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442.

[3] The claim is also made that the city should have required a bond by the debtor in possession. The city says that the administration-expense creditors should have required a bond. Each pot is calling the other black, and the arguments cancel out. The trustee also relies on the provision of the sales tax law allowing the city to require a bond of a vendor. Collection remedies being superseded by bankruptcy, this would seem unavailable against an estate in settlement in the bankruptcy court. Be that as it may, the status of trust funds is hardly to be varied; nor can failure to exercise such a privilege be considered laches.

the device of its use of the word "trustee" in the Sales Tax Act. There are two difficulties with this argument. Any governmental agency may protect itself as to taxes arising prior to bankruptcy by creating a lien for its taxes. See 3 Moore's Collier on Bankruptcy, 14th Ed. 1941, 2114-2117. And where a business is continued, the court officer is subject to local taxes "the same as if such business were conducted by an individual or corporation." 28 U.S.C.A. § 124a. If Congress gives tax collectors such preferred positions as these, we can hardly hold that the generalities of § 64, subd. a(1), preclude a city from protecting itself against the usual rules of distribution, especially when the city's policy is to shift the burden of the tax to a vendee of the bankrupt. We conclude that nothing in the Bankruptcy Act forecloses New York City's effective use of a trust device.

█ The bankruptcy trustee also argues that the fund now in his hands came not through the bankrupt, but through the general creditors by virtue of his "subrogation" to the rights of general creditors to invalidate chattel mortgages. It is true that the chattel mortgages were valid as against the bankrupt. But in many cases chattel mortgages are valid as against some creditors and not others; and yet ever since Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L. Ed. 133, 76 A.L.R. 1198, it has been considered proper to invalidate a mortgage in toto even though the only creditor entitled to invalidate has an insignificant claim, and proper to distribute the proceeds among all the creditors. See General Motors Acceptance Corp. v. Coller, 6 Cir., 106 F.2d 584, certiorari denied 309 U.S. 682, 60 S.Ct. 723, 84 L.Ed. 1026; Corley v. Cozart, 5 Cir., 115 F.2d 119. It would be odd to rely on the theory of Moore v. Bay, supra, to invalidate the mortgage, yet assert that the city stands in different shoes. Furthermore, the bankruptcy trustee, to hold to his theory, must, it seems to us, also argue that no administration-expense creditor can participate in the fund. Logically, the argument requires the fund to be distributed to the general creditors existing at the time the petition was filed. The trustee does not so argue, and we hardly would expect him to do so. For the real point is that the Bankruptcy Act contemplates full use of power to enrich the bankrupt estate and then, without reference to the sources of enrichment, to distribute the fund according to the rules of distribution. In this light, our decision that the city is equitably entitled to full payment requires satisfaction from whatever funds are in the trustee's hands, no matter where they came from.

Other questions are present in this case, but they cannot be decided on this record. The city agrees that the trustee may receive the value of his services in creating the fund, and we think that a reasonable view. The city also admits that if any other governmental agency has a trust claim against the estate the agencies should share equally. There may also be questions of recovering payments previously made to administration-expense creditors, Leonard v. Gage, 4 Cir., 94 F.2d 19, certiorari denied 303 U.S. 653, 58 S.Ct. 752, 82 L.Ed. 1113, if collection is not too costly or otherwise impracticable, inequitable, or inexpedient. See In re M. E. Smith & Co., D.C.Neb., 52 F.2d 212; Standard Oil Co. of New Jersey v. Grand Rapids Trust Co., 6 Cir., 98 F.2d 207; Kennebec Box Co. v. O. S. Richards Corp., 2 Cir., 7 F.2d 290. All such matters will be left to the bankruptcy court on remand.

Reversed and remanded for further proceedings in accordance with this opinion.