## LYFORD et al. v. STATE OF NEW YORK.
### No. 111.

Circuit Court of Appeals, Second Circuit.

Feb. 9, 1944.

Jesse E. Waid, of New York City, for appellants.

Elbert N. Oakes, of New York City, for Frederic E. Lyford.

White & Case, of New York City, for Bankers Trust Co.

Willkie, Owen, Otis, Farr & Gallagher, of New York City, for The New York Trust Co.

Flynt & Sully, of New York City, for Westmoreland Coal Co.

Gerald J. Carey, Asst. Atty. Gen. (Nathaniel L. Goldstein, Atty. Gen., and Orrin G. Judd, Sol. Gen., of New York City, on the brief), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from an order of the District Court in the reorganization proceedings, under § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, of the New York, Ontario & Western Railway Company made upon petition of the debtor's trustee and certain of its creditors objecting to claims of priority and lien of the State of New York in proof of certain grade crossing elimination claims. The order, so far as it went, substantially denied the petition, allowed the two claims, dated August 15, 1941, and March 11, 1942, in the respective amounts of $8,274.08 and $340,862.42, with interest, and adjudged that the State had a valid lien in the total sum of $349,136.50, with interest, against the debtor's real property. It reserved determination "as to the priority of the State's lien," without prejudice, for further consideration. Appellants are the debtor's trustee, the trustee of the debtor's Refunding 4% Gold Mortgage of 1892, the trustee of the debtor's General 4% Gold Mortgage of 1905, and one of a group of "six months' creditors" of the debtor, who, although not an intervenor, was allowed to file a brief below in support of the petition.

The debtor's railroad extends from Weehawken, New Jersey, to Oswego, New York, that portion of the line which lies within the State of New York being operated under a franchise from the State Legislature. By authority of a 1925 amendment to the New York Constitution, Art. VII, § 14, the Legislature adopted in 1926 what is known as the Grade Crossing Elimination Act, Laws 1926, c. 233, superseded by Laws 1928, c. 678, McKinney's Unconsolidated Laws, §§ 7901–7912. This act empowered the State Public Service Commission to order the elimination of any grade crossing which in the Commission's opinion was a menace to the public safety. Half the cost of the elimination was to be borne by the railroad whose crossing was to be eliminated, half by state and county governments, in the proportion of 49 per centum by the State and one per centum by the county or counties in which the crossings were located. If the railroad so elected, the State was authorized to pay the railroad's share in the first

instance, the railroad being obliged to repay the State in a manner to be determined by the State comptroller, so that the principal and interest of the State debt incurred for such elimination might be repaid when due.

Pursuant to this authority the Commission ordered the elimination of certain crossings on the debtor's lines, and the debtor elected in writing in all of the claims involved in this appeal to have the State pay its share of the cost of elimination in the first instance and to repay the State in installments of principal and interest over a period of fifty years. Upon the completion of the work, therefore, the comptroller, after hearings and notice to the debtor, determined that the total amount of the assessments for the debtor's share of the cost, payment of which was postponed, was $425,796.72. In every case the debtor expressly consented to the determination of the comptroller, the last consent being filed on January 2, 1936.

There was no default in the payment of any installment prior to May 20, 1937, when the debtor filed a voluntary petition for reorganization under § 77 of the Bankruptcy Act. On June 22, 1937, before ratification of the appointment of a trustee, the debtor prayed for permission to continue the payments on the installments as they accrued, referring to them as "for all substantial purposes to be regarded as taxes due and payable out of the Debtor's property." Six days later the district court made an order granting such permission. The installments for the entire year of 1937 were then paid. Beginning in 1938, however, the trustee of the debtor defaulted in the payment of the installments and continues in default.

Section 4(3) of the Grade Crossing Elimination Act, Laws 1928, c. 678, McKinney's Unconsolidated Laws, § 7904(3), provided, prior to 1940, that "In the event of the failure or refusal of the railroad corporation or corporations, or the successor or successors thereof, to pay the amount or amounts specified in such statement at the times therein prescribed, the amount or amounts so due and payable may be recovered as follows: * * *." Then followed detailed provisions to the effect that the comptroller should certify the amounts due and payable to the boards of supervisors of the counties in which the crossings were located, whereupon it became the duty of these boards to apportion the certified amounts among the towns and cities of their counties according to the assessed valuation of the real property of the railroad in each town and city, to place the amounts so apportioned on the assessment rolls of the towns and cities, and to issue warrants for the collection thereof. The final two sentences are as follows: "Thereupon it shall become the duty of such towns and cities through their proper officers to collect the respective several amounts so apportioned in the same manner as other taxes are collected in such towns and cities and when collected to pay the same to the county treasurer of such county who shall thereupon pay the same into the state treasury. Any amount so levied shall thereupon become and be a first and paramount lien upon all real property of such railroad corporation or corporations or the successor or successors thereof within such respective towns and cities."

By Laws 1940, c. 396, effective April 11, 1940, there were inserted in the first sentence of § 4(3) which is quoted above, after the word "prescribed," the following words, "or in the event of dissolution of such railroad corporation or corporations or successors, the entire indebtedness of such corporation in process of dissolution shall become due and payable upon said refusal"; the act then continued as before, that "the amount or amounts so due and payable may be recovered" according to the detailed statutory scheme there set forth.

Upon the default here the comptroller duly certified to the boards of supervisors of the various counties the amounts in question; but it appears that before the latter boards could complete the assessment and apportionment of taxes so provided by the act, the district court entered a restraining order preventing such action. The court vacated the restraining order on June 25, 1941, but directed the trustee to make no payments on the claims until its further order. Completion of the assessments was then made and the State filed the proofs of claim herein involved. The claim of August 15, 1941, is for the installments due for the years 1938 and 1939, while that of March 11, 1942, is for the balance of the principal due on the debtor's share of the cost of the eliminations. The latter claim is based on the premise that upon the debtor's default the entire sum owed became im-

mediately payable, a premise to which the 1940 amendment quoted above is particularly pertinent. The sole questions on this appeal concern the existence of a lien in favor of the State for either or both of these claims. Under the court's reservation, the relative priority of such a lien, if existing, is not yet determined. And no question as to the amounts of the claims is involved, the parties having stipulated as to the correct amounts (at figures somewhat less than those stated in the respective claims), which were then incorporated by the district court in its order.

■ *The Claim for the Overdue Installments.* There can be no doubt of the general power of a state to create a lien for debts owed to it. This authority stems from the prerogative right at common law which gave the British Crown priority over all other creditors for payment out of a debtor's property. The first Constitution of the State of New York, promulgated in 1777, provided that the common law of England which constituted the law of the Colony on April 19, 1775, should be and continue the law of the State. Since this provision has never been repealed, the People by virtue thereof have succeeded to the Crown's prerogative right of priority. In re Carnegie Trust Co., 206 N. Y. 390, 99 N.E. 1096, 46 L.R.A.,N.S., 260, affirming 151 App.Div. 606, 136 N.Y.S. 466; Marshall v. People of State of New York, 254 U.S. 380, 41 S.Ct. 143, 65 L.Ed. 315. As Justice Brandeis points out in the case last cited, 254 U.S. at page 384, 41 S.Ct. 143, 65 L.Ed. 315, the only changes of the right made by statute in New York have been usually by enlarging its scope. Thus, while the priority had been held not to obtain over a specific lien created by the debtor before the sovereign undertook to enforce its right, Wise v. L. & C. Wise Co., 153 N.Y. 507, 511, 47 N.E. 788, the Legislature had extended the prerogative right so as to give certain taxes priority

over prior encumbrances, a notable example being that of the franchise tax, which took priority over earlier mortgages on the corporate property. New York Terminal Co. v. Gaus, 204 N.Y. 512, 98 N.E. 11.[1] Even the Wise case has been overturned by statute, as the Court of Appeals has recently pointed out. In re David Brown Printing Co., 285 N.Y. 47, 54, 32 N.E.2d 787. The question thus turns upon the intent of the New York Legislature, as expressed in the Grade Crossing Elimination Act.

The statute in question has its own ambiguities, for § 4(3), quoted above, provides for the apportionment and assessment as a tax of the installments due only after default, and "thereupon" the amount levied becomes "a first and paramount lien." Relying upon the chronological sequence followed by the statute, the trustee and the creditors argue that no lien could attach to the debtor's property until the procedure had been completed, and that, since it had not been completed when the reorganization proceedings were initiated, no lien effective in these proceedings had attached to the debtor's realty.

This argument is not without force in the language relied upon to support it. The great difficulty is, however, that all the procedure is designed to lead up to the existence of the State's claim as "a first and paramount lien" upon the debtor's property; and the result argued for is that in the very time when, as the history of railroad receiverships had amply demonstrated, the real occasion for a lien arose, the State would have none even to secure repayment of money which it had advanced on behalf of the railroad. No better example of legislative locking of the stable door after the complete vanishing of the horse can be conceived. Both the history of the legislation and the language which stresses the paramount character of the lien demonstrate a contrary intent.

---

[1] Even though the lien is not specific until property has been appropriated to it, nevertheless it is valid not merely against prior encumbrances, but also against a receiver appointed in supplementary proceedings for a judgment creditor. Smith v. Meader Pen Corp., 255 App.Div. 397, 8 N.Y.S.2d 39, affirmed 280 N.Y. 554, 20 N.E.2d 13. It has been held, however, that before the lien is specific it has no priority in receivership proceedings over a claim in favor of the United States. People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754, a decision reaffirmed as to a Texas tax in United States v. Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356. That the rule in bankruptcy may be otherwise, see 4 Collier on Bankruptcy, 14th Ed. 1942, 216-224. When the lien is made specific against specified property, the Court of Appeals holds that it prevails even over a claim of the United States. In re Lincoln-Chair & Novelty Co., 274 N.Y. 353, 9 N.E.2d 7.

■ It is agreed by stipulation, as, indeed, we all know, that the increase in the use of highways by motor vehicles and the increase in the number of highways accentuated a condition of danger at grade crossings where railroads operated trains across highways at great speed. This prompted the Governor to propose and the Legislature to authorize necessary legislation leading to a vote of approval upon amendments to the Constitution authorizing a bond issue of $300,000,000 to carry out a comprehensive and effective plan of grade crossing elimination. Prior statutory provisions had proved ineffective for the purpose until constitutional authorization was thus secured. Thereafter the Legislature went to great pains to insure the State's recovery of the sums advanced by it for the railroads. It is well settled that in the exercise of its police power for the protection of its citizens a state may require of even an interstate railroad that it abolish grade crossings at its own expense entirely, whatever the cost and without regard to its financial ability. See extensive discussion by Holmes, J., in Erie R. Co. v. Board of Public Utility Com'rs, 254 U.S. 394, 41 S.Ct. 169, 65 L. Ed. 322, citing earlier cases; In re Staten Island Rapid Transit R. Co., 220 App.Div. 80, 221 N.Y.S. 129, affirmed 245 N.Y. 643, 157 N.E. 892, writ of error dismissed Staten Island Rapid Transit Co. v. Transit Commission of State of New York, 276 U.S. 603, 632, 48 S.Ct. 338, 72 L.Ed. 726. Hence this duty, which could have been required of the railroad alone, is here shared with the state and county governments; and the additional privilege of installment repayment is also granted, but only upon conditions carefully safeguarding the interests of the State.

Among these provisions are those previously cited which make applicable the methods used in the collection of "other taxes." In addition, seemingly because the extent of the lien for taxes in New York may vary as to different forms of taxes (cf. Tax Law, Consol.Laws, c. 60, §§ 99, 138, 165-c, 166, and cases previously cited; also Fort Washington Automobile Club v. S. G. S. Garage Co., 180 Misc. 104, 40 N.Y.S.2d 584), the Legislature expressly accorded to these obligations the status of a real estate lien which should be first and paramount. The intent to prefer this obligation, therefore, seems manifest. Indeed, the language is much more explicit

than that looked to by the court in New York Terminal Co. v. Gaus, supra, to establish the paramount lien there; as the dissenting judges in that case point out, the statutory provisions of the Tax Law, § 197, and perhaps even more § 201, look the other way, stating that the lien shall bind the property "from the time an actual levy shall be made by virtue" of the warrant. [204 N.Y. 519, 523, 98 N.E. 15.]

This conclusion as to the statutory intent is strengthened by a report (cited to us by counsel) of a Joint Legislative Committee appointed to investigate the grade crossing elimination problem, made at or about the time of passage of the 1926 act. See N.Y.Legis.Doc.1926, Vol. 17, No. 94, pp. 8, 9. It appears that the Committee was concerned as to how to assure repayment to the State of the moneys advanced, and it asked the Attorney General for an opinion as to the power of the Legislature to make the State's claim "a first lien upon the property of the railroad and collecting it in the form of a tax." The Attorney General gave an opinion that the repayments of the moneys so advanced to the railroad companies could be made a first and paramount lien on the property of the railroads, and such a provision was put in the first draft of the different grade crossing acts. "The railroad companies then satisfied the committee that under the provisions of many of their mortgages this clause in the bills would make it impossible for them to avail themselves of state money without making these mortgages due within thirty days if the railroad companies permitted a lien to be put on their property ahead of these mortgages." Assuming this to be an explanation of the change, it appears to have been a rational and quite successful arrangement to avoid attempts at immediate collection of the bonds by the trustees thereof, and, if anything, re-emphasizes a continued purpose, within the State's undoubted power, to establish paramountcy of the State claim as soon as default occurred. This was the construction immediately made by the State Attorney General (1927 Rep.Atty.Gen. 262), and, we are told, has been followed in other reorganizations, notably that of the Erie Railroad.

As the cases previously cited show, such a first and paramount lien would, therefore, be good against a state receivership or other insolvency proceeding. Is the

situation otherwise in bankruptcy or reorganization proceedings?

■ The State here stresses particularly the new provision of the Chandler Act amending § 67, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. b, to the effect that statutory liens for debts owed a state, which are required by state law to be perfected and which arise but are not perfected before bankruptcy, may be valid if perfected thereafter according to state law. The district court held this provision inapplicable because it was not expressly made applicable to railroad reorganizations as it was to petitions under Chapters X to XIII of the Act, 11 U.S.C.A. §§ 501 et seq. to 1001 et seq., adding that it would have been easy for Congress to have made the express application had it so desired. But § 77, sub. l, 11 U.S.C.A. § 205, sub. l, states that in railroad reorganization proceedings, "and consistent with the provisions thereof," the bankruptcy court's jurisdiction and powers and the rights and liabilities of all persons with respect to the debtor and its property are the same as in ordinary bankruptcy. In Lyford v. City of New York, 2 Cir., 137 F.2d 782, we made use of this statute to say that § 64, sub. a, of the Act, 11 U.S.C.A. § 104, sub. a, could be applied, at least by analogy, to § 77 reorganizations; and in New York Trust Co. v. Palmer, 2 Cir., 101 F.2d 1, we held § 57, sub. h, not to be inconsistent and hence applicable. Other aspects of § 67, sub. b, apart from the perfection clause with which we are now concerned, have been utilized in connection with § 77, Board of Directors of St. Francis Levee Dist. v. Kurn, 8 Cir., 98 F.2d 394, certiorari denied 305 U.S. 647, 59 S.Ct. 153, 83 L. Ed. 418; Thompson v. Glover, 8 Cir., 94 F.2d 544; In re Erie R. Co., D.C.N.D. Ohio, 37 F.Supp. 237; and Professor Moore strongly urges its applicability, 4 Collier on Bankruptcy, 14th Ed.1942, 170, 5 id., 1943, 490, 540. On the whole it seems more rational to apply the bankruptcy provisions where they are "consistent," and there seem no inconsistencies in the terms of § 67, sub. b, as applied to proceedings such as this. Even though the Chandler Act was passed after these proceedings began, the better view, even earlier, was in accord with its principle. See 4 Collier on Bankruptcy 228-230, with extensive citation of cases. It states a reasonable and convenient method of proceeding which we see no reason to disavow here.

But even if this provision is held not in terms applicable, we think with the court below that effect must be given to the lien in railroad reorganization just as it would have been in receivership. In Lyford v. City of New York, supra, which involved this same reorganization, we approved inferentially of the court's action in directing the amount of city taxes to be fixed by proceedings before the city comptroller, and only found troublesome the question whether under Arkansas Corporation Commission v. Thompson, 313 U. S. 132, 61 S.Ct. 188, 85 L.Ed. 1244, holding a state determination as to taxes accruing during a railroad reorganization binding upon the reorganization court, the court could revoke its direction because of the city's long delay in fixing the tax. Important and direct precedents are Thompson v. Glover, supra, and Thompson v. Evans, 8 Cir., 113 F.2d 794, where liens fixed by state law were given priority over the several railroad mortgages in the reorganization of the Missouri Pacific, even though the liens were not perfected until after the proceedings had begun.[2] See also Boteler v. Ingels, 308 U.S. 57, 61, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442, and the decision below, 9 Cir., 100 F.2d 915, 920; City of New York v. Rassner, 2 Cir., 127 F.2d 703; Davis v. City of New York, 2 Cir., 119 F.2d 559; and discussion in 3 Collier on Bankruptcy, 14th Ed.1941, 2114-2117. Lowden v. Northwestern Nat. Bank & Trust Co. of Minneapolis, Minn., 8 Cir., 84 F.2d 847, certiorari denied 299 U.S. 583, 57 S.Ct. 109, 81 L.Ed. 430, dealing with set-off of unmatured bonds, teaches little as to a paramount lien in favor of a state (cf. 4 Collier on Bankruptcy, 14th Ed.1942, 746-748; 5 id., 1943, 490, 491);

---

[2] The liens arose by virtue of an Arkansas statute which made a claim for personal injuries against a railroad a paramount lien on the railroad's property if suit were brought or claim in receivership made within one year after the original claim and the judgment for claimant or court order of allowance mentioned the lien. In these cases involving three different claims the injuries all occurred before commencement of reorganization proceedings, although the judgments were entered after that time; and as to one of the claims, suit was not instituted until after that time.

nor does United States v. Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356, hold that an inchoate lien is unenforceable, but only that the claim of the United States was paramount in a state receivership proceeding. See discussion by Professor Moore, 4 Collier on Bankruptcy 216-224. And City of New Orleans v. Harrell, 5 Cir., 134 F.2d 399, concerned more the perfecting of a lien on personal property by possession under § 67, sub. c, than the establishing of a lien under § 67, sub. b, as pointed out in the concurring opinion by Judge Hutcheson, cited and followed by us recently in City of New York v. Hall, 2 Cir., 139 F.2d 935.

■ This conclusion establishes the lien of the State for the installments as they become due. It should be added that there is no reason why the clear intent to give them at least the status of taxes should not also be given effect. They are of the type of obligations surely fitted to acquire that status. City of New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333; City of New York v. Rassner, supra; In re Mid America Co., D.C.S.D.Ill., 31 F.Supp. 601, 604; In re Siegelbaum's Inc., D.C.Conn., 38 F.Supp. 1009, 1011. The statute, 28 U.S.C.A. § 124a, makes it the clear duty of the receiver or trustee to pay the taxes where the railroad is still being operated as though it were conducted by an individual or corporation. Palmer v. Webster & Atlas Nat. Bank of Boston, 312 U.S. 156, 61 S.Ct. 542, 85 L.Ed. 642; In re Fonda, J. & G. R. Co., 2 Cir., 126 F.2d 604, certiorari denied Zimmer v. New York State Tax Commission, 316 U.S. 701, 62 S.Ct. 1299, 1300, 86 L.Ed. 1769. The installments are, therefore, payable as taxes. And though the question is not before us now, it may be pointed out that taxes incurred during the proceedings have been held to be expenses of administration. Boteler v. Ingels, supra; In re Fonda, J. & G. R. Co., supra; and cases cited in 3 Collier on Bankruptcy, 14th Ed.1941, 1509-1519, 2077-2081, 2165-2166; 5 id., 1943, 545, 546.[3]

■ *The Claim for the Accelerated Principal.* The State's claim is that upon default in payment of an installment the entire debt became due and payable, and that the fact that the statute was amended in 1940 to provide for acceleration was immaterial, since the measure of the debtor's obligation under the contract was not changed and a debt of this kind can be proved even though not due at bankruptcy. Cf. Lowe v. Sheldon, 276 N.Y. 1, 5, 11 N.E.2d 329. Appellants, however, assert that the State "possessed no power after the creation of such obligations to alter either the contract or the statutory provisions with respect to repayment." This contention is not developed further, and the grounds for the assertion of lack of power are not stated. In the original petition and the objections to the claims filed below, however, reference was made by number designation to provisions of both the state and federal constitutions which include the clauses relating to due process, impairment of the obligation of contracts, and the taking of private property for public use without just compensation. Without further development of the argument, we are not persuaded of its force, for it appears settled that the recall by a governmental body of a gratuity such as a tax exemption is not constitutionally objectionable. Maricopa County v. Valley National Bank of Phoenix, 318 U.S. 357, 362, 63 S.Ct. 587; Rector, Church Wardens and Vestrymen of Christ Church v. County of Philadelphia, 24 How. 300, 302, 65 U.S. 300, 302, 16 L.Ed. 602. And the Court of Appeals has often followed this conclusion as to what it has called "a spontaneous concession by the Legislature." People ex rel Davies v. Commissioners, 47 N.Y. 501, 504; People ex rel. Gallatin Nat. Bank v. Commissioners, 67 N.Y. 516, 519; City of Rochester v. Rochester R. Co., 182 N.Y. 99, 116, 74 N.E. 953, 70 L.R.A. 773, affirmed 205 U.S. 236, 27 S.Ct. 469, 51 L.Ed. 784; People ex rel. Iroquois Door Co. v. Knapp, 186 App.Div. 172, 173 N.Y.S. 641, affirmed 227 N.Y. 592, 125 N.E. 923. Here the arrangement in the first instance was clearly a gratuity which the State need not have granted; and appellants, therefore, would need to show a change in its character to justify their contention. But we need not pass on this matter, since we have determined that irrespective of this contention, the amend-

---

[3] The failure of the Court in Arkansas Corporation Commission v. Thompson, supra, to except from the state's power of adjudication—there upheld—taxes accruing during reorganization seemingly does not at all affect the question of priority. See Moore, op. cit.; Wurzel, Taxation During Bankruptcy Liquidation, 55 Harv.L.Rev. 1141, 1149-1151; and cf. Lyford v. City of New York, supra, 2 Cir., 137 F.2d at page 786, and City of New York v. Rassner, supra.

ment of 1940 does not disclose an intent for acceleration of the payments under the circumstances here disclosed.

■ In the light of the substantial protection which, as we have seen, has been accorded the accruing repayments, the State does not greatly need the added safeguard of acceleration, and the statute should be construed in the light of that fact. Since the installments remain continuing obligations of this debtor, and any successor in title, as they become due, no plan of reorganization can be feasible and hence acceptable which does not arrange for their payment and thus in substantial effect safeguard the ultimate interests of the State. On the other hand, the State also is interested in the continued operation of the railroad, and since it was willing to go far in easing the burden of grade crossing eliminations upon the railroads involved by spreading such burdens over many years, it may well have wished to accord the same favor to a debtor operating the railroad during reorganization proceedings. That, we think, is the correct interpretation of the statute.

It will be noted that by the original statute the fixing of the time of repayments is to be made by determination of the comptroller "in such manner so far as practicable that the state shall be able to pay therewith when due the portion of the state debt, exclusive of that part properly chargeable to the state, incurred for such elimination and interest thereon." Grade Crossing Elimination Act, § 4(2). That is, the duty of the comptroller was to fix the number, amounts, and times of repayments as would be required to pay the principal and interest upon the bonds issued for the crossing eliminations. Nothing is said or suggested to the effect that these determinations may be amended to substitute a faster rate of repayment once a default has occurred. And the amendment of 1940 in terms makes the acceleration turn upon "the event of dissolution" of a railroad. It is somewhat of a stretch to apply the term "dissolution" to a reorganization of the railroad under § 77, which is premised on the continuance of the operation of the property, if not by the same debtor when reorganized, then by some other corporation (Thompson v. State of Louisiana, 8 Cir., 98 F.2d 108, 110; Van Schaick v. McCarthy, 10 Cir., 116 F.2d 987, 993), and which calls for a dismissal of the proceedings if there is "undue delay in a reasonably expeditious reorganization of the debtor." Bankruptcy Act, § 77, sub. g, 11 U.S.C.A. § 205, sub. g. Cf. Simmons v. National Tool Co., 6 Cir., 110 F.2d 850, under § 77B, 11 U.S.C.A. § 207, and Abercrombie v. United Light & Power Co., D.C.Md., 7 F.Supp. 530, 541. We think the legislative intent was that the summary collection of the State's debt should be had only when operation of the railroad ceased on final dissolution and liquidation of the road. Consequently, the maturity of the debt-principal is not accelerated by anything had in these proceedings. But outside of the fact that repayment of the principal must be in installments, as heretofore, with a lien only for the overdue installments, the other consequences as adjudged by the district court are not greatly different than as we view them.

The order entered below must be modified, therefore, by omission of the provision allowing a lien for the principal of the debt. So far as the order fixes the amount due as principal it may stand, but with the provision that the time of payment is not accelerated. The debt must ultimately be paid by this debtor, or any successor who may succeed it on reorganization, and hence no plan of reorganization can be considered feasible unless it makes provision for the repayment of the installments as they become due. And further developments in these proceedings must be made in the light of the fact that the State has a lien on the debtor's realty for all installments which may become due hereafter and are fixed in amount as required by law. The order is affirmed so far as it allows the claim for installments, together with a lien therefor. The action is, therefore, remanded for further proceedings not inconsistent with this opinion.