STATE OF NEW YORK, Claimant-Appellant,

v.

James B. KILSHEIMER, III, and Jacob Grumet, Receivers for New York, Ontario and Western Railway Company, et al., Respondents-Appellees.

No. 151, Docket 24852.

United States Court of Appeals
Second Circuit.

Argued Nov. 21, 1957.

Decided Dec. 27, 1957.

Abe Wagman, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, John R. Davison, Sol. Gen., Albany, N. Y., and Anna M. Perdue, Asst. Atty. Gen., New York City, on the brief), for State of New York, claimant-appellant.

F. W. H. Adams, of Satterlee, Warfield & Stephens, New York City (Henry J. Formon, Jr., of Satterlee, Warfield & Stephens, New York City, on the brief), for respondents-appellees James B. Kilsheimer, III, and others.

Foster Bam, Asst. U. S. Atty., S.D.N. Y., New York City (Paul W. Williams, U. S. Atty., and Robert L. Tofel, Asst. U. S. Atty., New York City, on the brief), for respondent-appellee United States of America.

Before CLARK, Chief Judge, and L. HAND and HINCKS, Circuit Judges.

CLARK, Chief Judge.

The State of New York appeals from an order below in an action brought by the United States under I.R. C. § 7403, approving the sale of certain properties of New York, Ontario and Western Railway Company "free of all liens, including liens, claims to liens, and obligations accruing to any State, if any, arising out of the operation or ownership" of the railroad. For over twenty years this railroad has been in reorganization proceedings under § 77 of the Bankruptcy Act, 11 U.S.C. § 205. Those proceedings were dismissed by order filed below on January 31, 1957, on recommendation of the Interstate Commerce Commission. See Bankers Trust Co. v. Freeman, 2 Cir., 245 F.2d 200. Prior to the dismissal, and with leave of the court, the United States commenced this action to collect delinquent taxes and to enforce its tax lien against the railroad's property. As part of the relief sought, it asked the court to appoint a receiver and to dispose of the railroad's property in accordance with the court's determination of the merits of all claims and liens upon the property. The court decided to sell the property first and then determine the merits of the conflicting claims and liens and distribute the proceeds accordingly. It appointed receivers and ordered them to offer the property for sale. The order appealed from approves bids and confirms sales under those bids. This order is appealable. First Nat. Bank of Cleveland v. Shedd, 121 U.S. 74, 85, 7 S.Ct. 807, 30 L.Ed. 877; Felker v. Southern Trust Co., 8 Cir., 264 F. 798, 801, certiorari denied 254 U.S. 633, 41 S.Ct. 8, 65 L.Ed. 449.

The State of New York is one of the claimants against the railroad. It previously advanced part of the expenses of eliminating grade crossings imposed on the railroad by the Grade Crossing Elimination Act, Laws 1928, c. 678, McKinney's Unconsolidated Laws §§ 7901-7914, which requires repayments of such advance with interest in installments. Under the statute, defaulted installments become paramount liens on the railroad's real property. Lyford v. State of New York, 2 Cir., 140 F. 2d 840, certiorari denied sub nom. Bankers Trust Co. v. People of State of New York, 323 U.S. 714, 65 S.Ct. 41, 89 L.Ed. 574, 327 U.S. 788, 66 S.Ct. 808, 90 L.Ed. 1015. By a 1940 amendment to the statute, Laws 1940, c. 396, McKinney's Unconsolidated Laws § 7904(3), the entire indebtedness is accelerated and becomes due as a first lien on the railroad's property in the event of dissolution. When this action was commenced, the railroad owed the State $440,748.05 in past due installments. The State in its answer to the complaint sets this claim forth as a lien on the property to be sold. Not yet due, unless the entire debt has been accelerated, are

future installments of some $400,000 repayable over the next twenty-five to thirty years. The State argues that these future obligations, if not paid when due, become liens on the real property of the railroad without respect to the ownership of the property. It contends, therefore, that the district court erred in approving sales of the real property free of its contingent liens.

The nub of this controversy is the State's fear that acceleration of the entire indebtedness, resulting in a present lien of over $840,000, will deprive it of collecting a substantial amount of that sum because of the probable priority status of tax claims of the United States. Thus if the State at this time can avoid "losing" its contingent lien for one-half of this sum, it foresees future collection from the owners of the real property sold at the receivers' sale. The argument is ingenious; since absolute claims will obviously yield to federal priorities, the State looks for greater survivorship potential in contingent "obligations." The United States answers that the State cannot succeed in any such argument because of the paramount federal power implemented by I.R.C. § 7403. But we do not reach this point, since we agree with the receivers that—whatever the State's desires—its claims have actually become absolute.

We had occasion to examine the state statute in detail and trace its legislative history in Lyford v. State of New York, supra, 2 Cir., 140 F.2d 840, 847. We there determined that a reorganization of the railroad under § 77, 11 U.S.C. §205, was not an "event of dissolution," and that the entire debt was not accelerated because of the pendency of that proceeding. We said that "[w]e think the legislative intent was that the summary collection of the State's debt should be had only when operation of the railroad ceased on final dissolution and liquidation of the road." If, under the statute, an event of dissolution has occurred which automatically accelerates the entire indebtedness making it a present lien, the district court was correct in approving sale of the properties free of liens.

The State maintains that transfer of the railroad's property through judicial sale cannot affect its right to impose a lien on this property in the event of default of future installments. In support of this contention, it points to that portion of the statute which provides that in the event of default a lien may be perfected against the real property "of the railroad corporation or corporations, or the successor or successors thereof * * *." Grade Crossing Elimination Act § 4(3), McKinney's Unconsolidated Laws § 7904(3). But this language is not helpful, for if the whole debt has been accelerated by a "dissolution," a total default has already occurred and the State has a present lien to the extent of the whole debt which now can be enforced only in the instant action, if at all. The State argues that this is insufficient to give it the "substantial protection" which we found the statute "accorded the accruing repayments," 2 Cir., 140 F.2d 840, 847, and that to be fully protected it must be allowed to perfect its lien in the future against the real property in the hands of the foreclosure buyers or their assigns. We fail to see why a present lien for the whole indebtedness is not such "substantial protection." The State's lien, for most purposes, is still paramount; and the interposition of the United States as a possible senior lienor is a fortuity against which the legislature clearly did not attempt to defend, as indeed it could not.

The real issue is whether a "dissolution" which automatically accelerates the entire debt has resulted from the dismissal of the § 77 proceedings, the abandonment of the line and all railroad operation with the sanction of the Interstate Commerce Commission, and the institution of this action. The State argues that "dissolution" means a statutory dissolution of the railroad corporation under the applicable New York statutes. This contention hardly merits serious consideration. The statute pro-

vides that "in the event of dissolution of such railroad corporation or corporations or successors, the entire indebtedness of such corporation *in process of dissolution* shall become due and payable. * * *." [Emphasis added.] Grade Crossing Elimination Act § 4(3), McKinney's Unconsolidated Laws § 7904 (3). The italicized portion clearly indicates that the legislature used the term "dissolution" to signify liquidation of the road and cessation of operations; otherwise why provide for acceleration while the railroad is in process of dissolution? We pointed this out in Lyford v. State of New York, supra, 2 Cir., 140 F.2d 840, 847, where we said that acceleration occurred "when operation of the railroad ceased on final dissolution and liquidation of the road." Selling a railroad in twenty-two separate parcels (as was done here) for nonrailroad purposes is certainly a dissolution and liquidation of the road. Any other holding would condition acceleration on the barren formality of filing dissolution papers. Should they not be filed, the State would have to rely on the inapposite collection procedures of § 4(3) of the Act, McKinney's Unconsolidated Laws § 7904 (3), to collect future installments as they become due from individual buyers of the railroad properties. These procedures are workable only while the property is owned by the railroad or a corporation which has succeeded it in its operations.

Further, we see no support in the legislative history for the State's other contention that acceleration is permissive and not mandatory. The legislature provided that "in the event of dissolution * * * the entire indebtedness * * * *shall* become due and payable." [Emphasis added.] The word "shall" is consistent with the workable collection scheme of § 4(3) of the Act and provides for automatic, not discretionary, acceleration.

Order affirmed.