UNITED STATES of America, Appellant,

v.

Jerome **KALISHMAN**, Trustee in Bankruptcy of Seymour Wallas and Company, Bankrupt, Appellee.

No. 17780.

United States Court of Appeals Eighth Circuit.

June 4, 1965.

Karl Schmeidler, Atty., Tax Div., Dept. of Justice, Washington, D. C., made argument for appellant and filed brief with Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and I. Henry Kutz, Attys., Tax Div., Dept. of Justice, Washington, D. C., and Richard D. FitzGibbon, Jr., U. S. Atty., and Harold F. Fullwood, Asst. U. S. Atty., St. Louis, Mo.

Harry S. Gleick, St. Louis, Mo., made argument for appellee and filed brief.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

The sole question presented by this appeal is whether the United States is entitled to interest until date of payment of withholding taxes which accrued against the debtor while in possession of the business under an arrangement proceeding, and the interest did not begin to run on the tax until after the final adjudication in bankruptcy. Despite this simple statement of the problem here confronting us, the present case requires an exhaustive analysis of the present state of the law regarding post-bankruptcy interest claims. As appellee admits that "Appellant's statement of the case is essentially correct," the following facts are culled therefrom.

Seymour Wallas and Company, a corporation, filed a petition for an "arrangement" on June 24, 1960. Thereafter, it was adjudicated a bankrupt on March 16, 1961, having failed to submit an acceptable plan. On September 15, 1961, the United States filed a claim for taxes, separated into two claims—one for taxes accruing before the arrangement proceeding,—the other for taxes accruing during the arrangement. The latter claim is the only one in issue here. It

was for assessed withholding taxes of $6,602.89 for the first quarter of 1961, plus $202.38 interest to the date of filing the claim, and interest of $1.06 per day thereafter until payment of the principal was made—ultimately on May 6, 1964. These taxes were not required to be reported or paid until April 30, 1961, subsequent to the adjudication in bankruptcy after failure of the arrangement proceeding; hence the interest here did not begin to accrue until that date. The Referee allowed the tax claim in the principal amount of $6,602.89 as an expense of administration of the arrangement proceeding but denied the claim for interest, basing his decision on City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949). On petition for review, the District Court affirmed in an unreported order. This appeal followed.

At the outset we are met with a jurisdictional question, raised by appellee in view of § 24, sub. a of the Act,[1] which limits appeals in bankruptcy proceedings to matters involving more than $500.00 unless prior allowance of the appeal has been granted by the Court of Appeals. (See Rule 25 of this Court, 28 U.S.C.A., Rules, 8 Cir.) Since appellant claims interest to date of payment, it is readily apparent that substantially more than $500.00 is in issue here, even though the amount claimed was less than that sum at the time of filing the claim.[2] Regardless, this is an appeal which we can, and should, hear in our discretion, in the interest of substantial justice. R.F. C. v. Prudence Group, 311 U.S. 579, 61 S.Ct. 331, 85 L.Ed. 364 (1941); New York Credit Men's Adjustment Bureau, Inc. v. Strauss & Co., 296 F.2d 702 (2 Cir., 1961). It is of sufficient importance to the future administration of the Bankruptcy Act (hereinafter denominated Act) to warrant our consideration thereof on its merits. State of California v. Fred S. Renauld & Co., 179 F.2d 605 (9 Cir., 1950).

---

1. 11 U.S.C.A. § 47, sub. a.

2. The accrued interest now claimed by the Government amounts to $1,172.28.

■ Neither party questions the allowance of the principal amount of the taxes here considered as a proper expense of administration of the arrangement proceeding, entitled to a first priority under §§ 64, sub. a [3] of the Act. They are taxes incurred while the property of the debtor was *in custodia legis* under the administration of the bankruptcy court, and thus are clearly expenses of administration as that term has long been understood. Cf. Dayton v. Stanard, 241 U.S. 588, 36 S.Ct. 695, 60 L.Ed. 1190 (1916); State of Missouri v. Gleick, 135 F.2d 134 (8 Cir., 1943); United States v. Sampsell, 266 F.2d 631 (9 Cir., 1959). See also, 3 Collier on Bankruptcy § 64.105, p. 2088. It is appellant's contention that since under normal circumstances interest on unpaid taxes is considered an integral part of a tax liability itself, the interest here in issue should equally share that preferred status unless the fact of bankruptcy on the part of the taxpayer requires a different result.

■ In bankruptcy matters the Bankruptcy Act takes precedence over other statutes, and governs in any case where there might be conflict. Guarantee Title & T. Co. v. Title Guaranty & S. Co., 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706 (1912); Adams v. O'Malley, 182 F.2d 925 (8 Cir., 1950); United States v. Wood, 290 F. 109 (2 Cir., 1923), aff'd 263 U.S. 680, 44 S.Ct. 134, 68 L.Ed. 503. Thus, in the matter of priorities the courts are bound by the terms of the Act, regardless of other statutory preferences. State of Missouri v. Ross, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46 (1936); Davis v. Pringle, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974 (1925). Present § 64 sub. a of the Act, supra, represents a clear departure from pre-Chandler Act practice, in that it reduces all costs and expenses of administration to a parity; that is, taxes no longer have a special priority over any other expenses of administration, all of which now share the same priority on an equal basis. State of Missouri v. Earhart, 111 F.2d 992 (8

Cir., 1940); In re Columbia Ribbon Co., 117 F.2d 999 (3 Cir., 1941). Therefore, our consideration of post-bankruptcy interest in this tax claim can be no different than that of interest accruing generally as cost of administration on other like claims.

■ Considering interest in connection with bankruptcy, it appears that there is a " * * * long-standing rule against post-bankruptcy interest * * * implicit in our current Bankruptcy Act." New York v. Saper, 336 U.S. 1. c. 332, 69 S.Ct. 1. c. 556. In Vanston etc. Committee v. Green, 329 U.S. 156, 1. c. 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946), the Court stated: "The general rule in bankruptcy * * * has been that interest on the debtors' obligations ceases to accrue at the beginning of proceedings." As said in Bruning v. United States, 376 U.S. 358, at 361–362, 84 S.Ct. 906, at 11 L.Ed.2d 772: "As to claims against the trustee in bankruptcy, the general rule for liquidation of the bankruptcy estate has long been that a creditor will be allowed interest only to the date of the petition in bankruptcy. * * * *" and that Saper, supra, makes the general rule (applicable) "to claims against the trustee for taxes as well as for other debts." As the Court, in Vanston etc. Committee v. Green, pointed out, this is a matter of equity * * * the delay in distribution being caused by law, and the estate should not be penalized for the delay by additional interest. In this connection, see Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911); United States v. Bass, 271 F.2d 129 (9 Cir., 1959); Massachusetts v. Thompson, 190 F.2d 10 (1 Cir., 1951); 3 Collier on Bankruptcy, § 63.16, p. 1858. There is also a matter of administrative convenience, as the very purpose of a "cutoff" or "bar" date would be thwarted if obligations are allowed to accrue past that date, continuing the vicious circle which bankruptcy was designed to terminate. This is not to say that such post-bankruptcy interest may never be

3. 11 U.S.C.A. § 104, sub. a.

allowed, for it is settled that the creditors' rights thereto will be recognized should the estate subsequently prove to be solvent, or should the estate itself subsequently receive income in the form of interest. United States v. Harrington, 269 F.2d 719 (4 Cir., 1959). We realize that the foregoing cases deal with interest which began to accrue prior to bankruptcy, on debts likewise accruing. Be that as it may, we think the broad policy and reasons therefor, toward post-bankruptcy interest, should be kept in mind in the consideration of the specific issue in question here.

■ In the instant case we deal with a debt incurred as an expense of administration by a debtor in possession, the interest on which did not begin to accrue until after a subsequent adjudication in bankruptcy. By virtue of § 378(2) [4] of the Act, the abortive arrangement proceeding and the subsequent bankruptcy are considered parts of a single proceeding so far as possible, and we must not consider the debt here incurred by the debtor in possession as though it were contracted by the trustee during bankruptcy.

■ There is no question, of course, that a trustee is liable for taxes incurred during the administration of the estate, whether resulting from continuing to do business, or simple ad valorem taxes on the property in the estate. Boteler v. Ingels, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78 (1939); In re Chicago & N. W. Ry. Co., 119 F.2d 971 (7 Cir., 1941); State of Missouri v. Earhart, supra. Here, the question very simply is whether the Government is entitled to interest on such taxes after straight bankruptcy has been adjudicated, until the date of payment of the taxes accruing during a prior arrangement proceeding.

In 1949, the Supreme Court handed down the decision in City of New York v. Saper, supra. Since that time, the Saper decision has been variously considered in lower federal courts on numerous occasions. Such cases, of which the present is apparently the latest, involved the contention that the very broad language of Saper should be restricted to the specific situation involved there, but it should be noted that in each case thereafter the courts have taken the language of Saper at face value and accepted the rationale thereof, wherever logically required to do so. See, for example, United States v. General Engineering & Mfg. Co., 188 F.2d 80 (8 Cir., 1951), aff'd 342 U.S. 912, 72 S.Ct. 358, 96 L.Ed. 682; United States v. Edens, 189 F.2d 876 (4 Cir., 1951), aff'd 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682; State of New York v. Feinberg, 204 F.2d 502 (2 Cir., 1953).

The Saper case involved the question of post-bankruptcy interest on taxes accruing prior to straight bankruptcy. The Court, in denying such interest, noted that prior to the Chandler Act, interest was commonly allowed, based on the especially preferred status of taxes under the Act of 1898, and further, that lower federal courts had continued to do so even after the Chandler Act. However, in Saper it clearly held such practice to be in error, as being in violation of the long-standing bankruptcy tradition that accrual of interest against the estate ceases on the inception of bankruptcy as a matter of equity and practicality. Each of the cases subsequently considering Saper have likewise been concerned with straight pre-bankruptcy tax debts, and we are not cited to, nor have we found any subsequent cases specifically dealing with an issue situation such as here present. We think it necessary to remember, however, that the Court in Saper considered with favor the "long-standing rule" against post-bankruptcy interest based on equitable considerations.

Appellant asserts that Boteler v. Ingels, supra, is authority for allowance of the interest attempted to be collected here. In that case the Court held that a trustee in bankruptcy was liable for state penalties imposed for nonpayment of automobile license fees when the fees

and penalites accrued during the operation of the business by the trustees for purposes of liquidation. We are also referred to In re Chicago & N. W. Ry. Co., supra, holding, on the authority of Boteler, an estate in bankruptcy was liable for the penalties on overdue state taxes accruing after the institution of the bankruptcy proceedings. Both of the above cases were mainly premised on the provisions of the predecessor statute of 28 U.S.C.A. § 960, which provided generally the same as present § 960.[5] The reasoning of the Court in the above-cited cases was that § 57, sub. j [6] was applicable only to penalties incurred by the bankrupt individually prior to bankruptcy, and that it was not applicable to penalties brought on by the action of the trustee himself. In such instance, the provisions of § 960 of Title 28 were held to prevail. Without speculating as to the "intent" of the Supreme Court in Saper (which opinion did not mention Boteler), we believe the present case to be distinguishable from Boteler, and to come under the reasoning laid down in Saper without doing violence to Boteler. Our understanding of Boteler is that it holds simply that a trustee operating a business is subject to tax statutes, the same as any other citizen, and subject to penalties if he does not comply with the law. Such is not the issue in the present case.

Here, we deal with "interest" after adjudication, within the concept of " * * * compensation for the use or forbearance of money." Deputy v. duPont, 308 U.S. 488, 498, 60 S.Ct. 363, 368, 84 L.Ed. 416 (1940); C.I.R. v. Meyer, 139 F.2d 256 (6 Cir., 1943). Boteler deals with a "penalty" as punishment for wrongdoing. United States v. Chouteau, 102 U.S. 603, 26 L.Ed. 246 (1881); Unemployment Reserves Commission v. Meilink, 116 F.2d 330 (9 Cir., 1940). The long-standing rule followed in Saper is concerned with interest after adjudication, not penalties as accrued in

Boteler. Certainly, no argument can be made that malfeasance by a trustee in bankruptcy is never to be allowed pecuniary reimbursement in a bankrupt estate, to the extent of actual loss caused thereby, if the trustee undertakes to act contrary to law. This is what is ruled in Boteler. Here, appellant's claim is wholly related to the concept of interest (i. e. reimbursement for the use of money), which interest commenced to run after the date of adjudication in bankruptcy. True, the statute supra gives taxes a priority * * * and they are to be paid as soon as possible * *. If not so paid in a straight bankruptcy proceeding, any delay therefor can only be traced as caused by the law, not by the bankruptcy estate. This is the important distinction we find in the facts here. Paying taxes at the normal distribution time for debts of like priority, as ordered by the Court, creates quite a different situation than the affirmative violation of operating motor vehicles on the highways of a state without paying the necessary state motor vehicle license taxes.

Bruning v. United States, supra, does not require a *contra* ruling. There, interest on tax claims for the period from the filing of a petition in bankruptcy to the date of payment of the principal tax claim was recovered by the Government out of assets personally acquired by the tax debtor *after* his adjudication of bankruptcy, in the light of § 6873(a) of the Internal Revenue Code of 1954 (26 U.S.C.A. § 6873(a)). The facts and applicable law in Bruning do not militate against the ruling made in Saper. As the Court points up in Bruning, that "case concerns the debtor's personal liability for post-petition interest on a debt for taxes which survives bankruptcy to the extent that (the tax) is not paid out of the estate." (Par. added.) 376 U.S., l. c. 362, 84 S.Ct. l. c. 908. Here, we are concerned with pro rata distribution

---

5. "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to

such business to the same extent as if it were conducted by an individual or corporation." 28 U.S.C.A. § 960.

6. 11 U.S.C.A. § 93, sub. j.

of assets of a bankrupt's estate among preferred creditors, having equal priority as required by § 64, sub. a of the Bankruptcy Act, supra.

█ Appellant's argument that this interest should be enforced because of the trustee's willful refusal to pay the tax immediately when due, is without merit. The Government, as a creditor in bankruptcy, occupies no favored position over other creditors of like priority. State of Missouri v. Earhart, supra. There is nothing in this record to suggest that the tax in question was not given the same consideration as other costs of administration which occupied the same priority. To allow this interest would be in effect to charge the estate with interest, because the trustee complied with the terms of the Bankruptcy Act and refused to give the taxes a special priority not sanctioned by the Act. Allowing this interest would be to place the trustee in the unenviable position of being forced to choose between his responsibility to conserve the estate, and creating a new priority for taxes, or strictly abiding by the statutory scheme for the payment of all debts of equal priority in bankruptcy estates.

█ Whether the tax accrued before bankruptcy or subsequent thereto, the evil propagated by continually accruing interest remains the same. In neither case is it logical to charge a bankrupt estate a fee for the use of money when it is the force of law which prevents the return of the principal to the creditor, rather than the desire of the debtor to retain its use. In light of the policy enunciated in Saper, we believe the referee was correct in denying interest on this tax claim. (See:) Collectibility of Post-Bankruptcy Interest, by Max Schwartz, Vol. 36, No. 2, p. 49, Jour. Nat'l Ass'n of Referees in Bankr.

█ In the alternative, the Government asserts that by virtue of § 7501 (a) [7] of the Internal Revenue Code of 1954, the principal amount of the tax here withheld, and the interest thereon, constitute a trust fund in the hands of the trustee to which the United States as *cestui* has an absolute right, independent of any questions of priority, citing: City of New York v. Rassner, 127 F.2d 703 (2 Cir., 1942), construing a city ordinance making the vendor a trustee when collecting city sales tax from vendees; and United States v. Sampsell, 193 F.2d 154 (9 Cir., 1951), construing the predecessor statute of present § 7501(a), supra; Hercules Service Parts Corp. v. United States, 202 F.2d 938 (6 Cir., 1953), as to withholding tax; and In re Airline-Arista Printing Corp., 156 F.Supp. 403 (D.C.N.Y., 1957), aff'd 2 Cir., 267 F.2d 333, also concerning withholding tax. These cases, all following New York v. Rassner, supra, holding that withheld tax funds constitute trust funds in favor of the taxing authority. Although the argument against allowing such statutory trusts to change the scheme of priorities in the Act is quite convincing,[8] we do not believe that question is present in this case. Whether or not these withheld funds constituted a trust fund for the benefit of the United States is rendered moot by the fact that the principal of the fund is not in issue here, and has in fact been paid over to the Government. As we have determined that the Government is not entitled to interest as here claimed, there are no further funds in issue, and thus no reason to reach the question as to whether or not a trust was so created.

For the reasons noted, the decree of the referee as adopted by the District Court is

Affirmed.

---

7. "(a) General Rule.—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of the tax so collected or withheld shall be held to be a special fund in trust for the United States. * * * "

8. See Note 27, p. 2066, 3 Collier on Bankruptcy.