In the Matter of **HALO METAL PRODUCTS, INC., an Illinois Corporation.**

**UNITED STATES of America,**
**Appellant,**

v.

**William L. RANDALL, Trustee, Bankrupt, Appellee.**

**No. 17608.**

United States Court of Appeals
Seventh Circuit.

Dec. 12, 1969.

Thomas A. Foran, U. S. Atty., Chicago, Ill., Lee A. Jackson, Appellate Section, Tax Division, Karl Schmeidler, Crombie J. D. Garrett, Attorneys, U. S. Department of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Eugene Robinson, Asst. U. S. Atty., of counsel, for appellant.

Kevin J. Gillogly, Chicago, Ill., for appellee.

Before HASTINGS and KNOCH, Senior Circuit Judges, and DILLIN, District Judge.*

HASTINGS, Senior Circuit Judge.

The district court affirmed an order of the referee in bankruptcy refusing to declare a trust in favor of the United States for income and social security taxes withheld from employees' wages by the bankrupt while acting as a debtor-in-possession under an arrangement proceeding pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 *et seq.* The United States appealed. We affirm.

Halo Metal Products, Inc., filed a petition for an arrangement under Chapter

* Judge Dillin is sitting by designation from the Southern District of Indiana.

XI on August 18, 1967. On August 20, 1967, orders were entered allowing the debtor to remain in possession and requiring it to file monthly reports, to keep separate books and records of its operation as of August 18, 1967, to set up separate bank accounts for its general, payroll, and tax indebtedness, and to make appropriate disbursements therefrom.

While operating its business as a debtor-in-possession, Halo failed to file regular reports, failed to properly set up the separate bank accounts, failed to deposit in the tax account amounts withheld from employee wages as income and social security taxes, and failed to make payment of such taxes.

On November 22, 1967, Halo was adjudged a bankrupt. Pursuant to court order, its physical assets were sold.

The United States filed a petition in the bankruptcy proceeding for an order imposing a trust in its favor on $1,075.02 of the bankrupt's estate and ordering payment to it of such amount prior to payment of the costs of administration. This amount represents the income and social security taxes withheld by the debtor-in-possession which were not paid over to the United States.

The United States contends such a trust is imposed by Section 7501(a) of the Internal Revenue Code of 1954, which provides:

"*General Rule.*—Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

■ It is well settled that, absent such a trust, taxes incurred during a Chapter XI arrangement enjoy only a *pro rata* first priority with all other administrative expenses under Section 64a (1) of the Bankruptcy Act, 11 U.S.C.A. § 104(a) (1).[1] *See, e. g.*, Missouri v. Earhart, 8 Cir., 111 F.2d 992, 995 (1940) and cases cited therein.

The fund created by the sale of the bankrupt's physical assets is the only substantial asset of the estate and exceeds the Government's tax claim by a mere few hundred dollars. It is thus clear that if the Government is given a super priority under its trust fund theory, the claims for other administrative expenses will not be paid.

Three federal courts of appeal have accepted the Government's trust fund theory in cases presenting factual situations essentially identical to that before us.

The Second Circuit's decision in City of New York v. Rassner, 2 Cir., 127 F.2d 703 (1942), is the first, and still leading, case supporting the Government's position. It involved city sales taxes and a state statute making sellers trustees of such taxes for the city upon their collection. The court noted that a beneficiary must trace funds where mingling takes place prior to bankruptcy, but held tracing was unnecessary where a debtor-in-possession acting as an officer of the bankruptcy court mingled trust funds. The court reasoned that "if we hold that the city must now trace the funds, we state in effect that any

---

1. "§ 104. Debts which have priority.

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration * * *. Where an order is entered in a proceeding under any chapter of this title directing that bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding * * * shall have priority in advance of payment of the unpaid costs and expenses of administration * * * incurred in the superseded proceeding. * * *."

beneficiary of a trust which is handled by an officer of a bankruptcy court must always protect himself by petitioning in advance for proper administration of the trust. Thus stated, it can be seen that we would be condoning improper action by a trustee so long as he could successfully get away with it. As a court of equity, a bankruptcy court can hardly proceed on this assumption. It is the duty of the bankruptcy court in distributing an estate to do so equitably." 127 F.2d at 706. (Footnote omitted.)

The court there recognized that "of course, an overriding policy of the Bankruptcy Act could prevent preferred satisfaction of even trust claims." *Id.* However, it concluded that no such policy was reflected by "the generalities of § 64, subd. a(1)." *Id.*, at 707.

*Rassner* was followed by the Ninth Circuit in United States v. Sampsell, 9 Cir., 193 F.2d 154 (1951), and by the Sixth Circuit in Hercules Service Parts Corp. v. United States, 6 Cir., 202 F.2d 938 (1953). Both cases involved federal income and social security withholding taxes and the predecessor statute to Section 7501(a).

The Second Circuit reaffirmed *Rassner* and applied it to federal taxes in In re Airline-Arista Printing Corp., 156 F.Supp. 403 (S.D.N.Y.1957) aff'd per curiam, 2 Cir., 267 F.2d 333 (1959). It held that the 1952 amendment to Section 64a(1) [2] granting priority to costs and expenses of an ensuing bankruptcy proceeding over costs and expenses of a superseded arrangement did not reflect a new "overriding policy of the Bankruptcy Act" which would compel a reversal of the *Rassner* rule.

■ With deference and for reasons hereinafter set out, we are unable to follow the *Rassner* line of decisions. We hold that the United States is not entitled to a super priority by virtue of Section 7501(a) of the Internal Revenue Code.

The Third Circuit has noted that the tax trust fund created by the first sentence of Section 7501(a) is limited by the second sentence of that section. "Thus, though such collections are considered by law to be held in trust, that trust is subject to the same limitations as are the taxes from which the trust arose. Here, that limitation is the structure of the Bankruptcy Act * * *." In re Connecticut Motor Lines, Inc., 3 Cir., 336 F.2d 96, 107–108 (1964).[3]

The Supreme Court, since the *Rassner* precedent, has recognized that the second sentence of Section 7501(a) may impose bankruptcy-created limitations on the tax trust fund imposed by the first sentence. In Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), the Court held that the United States was not entitled to post-bankruptcy *interest* on withholding taxes which accrued while the debtor was in possession under Chapter XI, but which were not paid until after the adjudication of bankruptcy. The Court then continued:

"We find no merit in the Government's alternative suggestion that the interest on two of the taxes here in question—those withheld from the wages of employees and those collected from the patrons of the cabaret—constitutes a trust fund over which the United States has an absolute priority under § 7501(a) of the Internal Revenue Code. * * * The second sentence of § 7501(a) specifically provides that interest on such a trust fund is

---

2. See footnote 1, *supra.* The second quoted sentence was added by the 1952 amendment. 66 Stat. 426.

3. The central issue decided in *Connecticut Motor Lines* was that income and social security withholding taxes arising from wages earned prior to bankruptcy, but paid during bankruptcy, were not first priority "costs and expenses of administration" within Section 64a(1), but were fourth priority "taxes legally due and owing by the bankrupt" within Section 64a(4). The quoted passage came in response to the Government's argument that because the taxes were a trust fund, the Government need not file a proof of claim as required in fourth priority matters.

collectible in the same manner as the taxes from which the fund arose. Since we have already determined that no interest on any of the taxes here in question accrues beyond the period of the arrangement proceeding, no interest could accumulate on a trust fund composed of the withholding and cabaret taxes." 384 U.S. at 690–691, 86 S.Ct. at 1683–1684. (Footnotes omitted.)

■ The District Court of Colorado has applied this reasoning to the identical issue before us. It held "the second sentence of § 7501(a) means that the trust fund mentioned in the first sentence is nevertheless subject to the provisions of § 64(a) of the Bankruptcy Act which establishes a priority for all expenses of administration including taxes. So construed there is no conflict between § 7501(a) and § 64(a) * * *." In re Green, 264 F.Supp. 849, 851 (1967).

We are persuaded that this construction is correct. It gives effect to both Congressional enactments. On the one hand, it preserves the tax trust arrangement and thus leaves available to the Government certain favorable collection procedures. The legislative history of Section 7501(a) confirms this was the major goal of its enactment. The Senate Committee Report, S.Rep.No. 558, 73d Cong., 2d Sess., p. 53, noted:

"Under existing law the liability of the person collecting and withholding the taxes to pay over the amount is merely a debt, and he cannot be treated as a trustee or proceeded against by distraint. Section [7501(a)] * * * impresses the amount of taxes withheld or collected with a trust and makes applicable for the enforcement

of the Government's claim the administrative provisions for assessment and collection of taxes."

The Conference Report, H.Conf.Rep.No. 1385, 73d Cong., 2d Sess., p. 32, reflected the same purpose:

"This amendment impresses taxes collected or withheld with a trust in favor of the United States and makes applicable for the enforcement of the Government's claim the administrative provisions applying to the assessment, collection, and payment of taxes."

On the other hand, this construction makes collection of the trust fund in bankruptcy situations subject to the usual bankruptcy priority rules and thus honors the policy decision of Congress reflected in Section 64 as to the relative merit of various claims upon the bankrupt estate.

But, even if we accept *arguendo* the Government's position that Section 7501 (a) is intended to grant trust fund taxes a higher priority in bankruptcy than they are allowed by Section 64a(1) of the Bankruptcy Act, it avails the Government nothing. The Supreme Court has held on a number of occasions that where there is a conflict between the order of priorities set out in the Bankruptcy Act and preferences given to the Government by nonbankruptcy legislation, the bankruptcy priorities should control. Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706 (1912); Davis v. Pringle, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974 (1925); Missouri v. Ross, 299 U.S. 72, 76, 57 S.Ct. 60, 81 L.Ed. 46 (1936).[4] *See also* United States v. Key, 7 Cir., 407 F.2d 635, 638 (1969) and United States v. Kalishman, 8 Cir., 346 F.2d 514, 517 (1965).

4. The fact that in both *Guarantee Title* and *Pringle* the Court seems in part to base its decisions on the fact that the bankruptcy priority provision was enacted after the tax preference provision and changed the previous priority scheme in no way detracts from their precedential value for the instant case. Section 7501 (a) is derived unchanged from an Act of May 10, 1934, c. 277, § 607, 48 Stat.

768. Present Section 64a(1) derives from the 1938 Chandler Act and represents a clear departure from pre-Chandler Act practice in reducing all costs of administration—including taxes—to a parity in the priority scheme. *See* United States v. Kalishman, 8 Cir., 346 F.2d 514, 517 (1965), and 3A Collier on Bankruptcy 2051–2052.

As above noted, *Nicholas, supra,* held that bankruptcy law overrides the Section 7501(a) trust fund as to the *interest* on withholding taxes attributable to prebankruptcy operations by a Chapter XI debtor-in-possession. The Court expressly did not reach the question now before us concerning the *principal* of such taxes. However, its use of the following language indicates the relevance of *Guarantee Title* to that question:

"We need not here determine whether, with regard to the *principal* of those taxes, the general language of § 7501(a) overrides the strong policy of § 64a(1) of the Bankruptcy Act, which establishes a sharply defined priority that places all expenses of administration on a parity, including claims for taxes. Cf. Guarantee Title & Trust Co. v. Title Guaranty & Surety Co., 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706; Davis v. Pringle, 268 U.S. 315, 45 S.Ct. 549, 69 L.Ed. 974; Missouri v. Ross, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46." [5] 384 U.S. at 691, 86 S.Ct. at 1683–1684.

Our reading of *Nicholas* affords no support for the *Rassner* conclusion that there exists no strong bankruptcy policy to override the preference the Government finds created by Section 7501(a). *See also* United States v. Kalishman, *supra* at 520 of 346 F.2d, In re Connecticut Motor Lines, Inc., *supra* at 107–108 of 336 F.2d; and 3A Collier on Bankruptcy 2070, n. 27.

We find such a strong policy in the very enactment of Section 64a(1). In enacting that subsection, Congress clearly rejected earlier priority schemes giving some administrative expenses higher priorities than others and provided that all such claims should share equally on a first priority basis. The statute gives no hint of any Congressional intent to continue the more favorable treatment of certain administrative expenses. *See* 3A Collier on Bankruptcy 2070 n. 27 at 2071.

Further indication of an overriding bankruptcy policy against the trust fund preference sought by the Government may be gained from a study of two parallel lines of statutory development, one continually reducing and limiting the priority to be accorded taxes and the other regularly according a more and more favorable priority to administrative expenses. *See* In re Connecticut Motor Lines, *supra* at 102–103, and 3A Collier on Bankruptcy 2046–109 and 2149–59. It is clear that if the trust fund theory is accepted, taxes will be paid at the expense of administrative costs. Such a result would be patently contrary to the strong and continuing Congressional policy evidenced by these statutory developments.

Until 1926 "taxes legally due and owing" were given first priority status above all else. *See* 3A Collier on Bankruptcy 2046–48 and 2155–56, and Bankruptcy Acts of 1800, 1841, 1867 and 1898. In that year, taxes were reduced to sixth priority behind, among other things, administrative expenses. Act of May 27, 1926, 44 Stat. 662. This priority was retained in the Chandler Act of 1938.[6] Act of June 22, 1938, 52 Stat.

---

5. It should be noted that the Court may have implicitly decided the reserved issue in an earlier portion of its opinion when it said: "[T]axes incurred during the arrangement period are * * * technically a part of the first priority under § 64a(1). The final sentence of that section, however, subordinates arrangement expenses within that priority to the expenses of the superseding bankruptcy administration. Tax claims incurred during Chapter XI proceedings are therefore in fact junior to claims for expenses incurred in subsequent bankruptcy proceed-

ings." 384 U.S. at 687–688, 86 S.Ct. at 1682. Under the Government's theory the arrangement tax claims take priority over *all* claims for administrative expenses arising out of the bankruptcy proceeding. The Second Circuit specifically so held in Airline-Arista, 267 F.2d at 334, in affirming on the opinion of the learned District Judge, 156 F.Supp. at 407.

6. Consolidation of some prior categories, however, resulted in taxes being numbered as the fourth priority in the 1938 Act.

883. However, that Act further reduced the preference accorded tax claims by making them subject for the first time to the general limitation period for filing claims. 11 U.S.C.A. § 93(n).[7]

On the basis of these amendments, the Supreme Court further reduced the special treatment given taxes by holding they were no longer entitled to a special exemption from the general prohibition against post-bankruptcy interest on claims against the estate. City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949).

The legislative assault continued with a 1966 amendment to Section 64a(4), 11 U.S.C.A. § 104(a) (4), which limited the fourth priority to "taxes * * * legally due and owing * * * *which* *are not released by a discharge in bankruptcy* * * *."* Act of July 5, 1966, 80 Stat. 271 (Emphasis added.) The same legislation amended Section 17a(1), 11 U.S.C.A. § 35(a) (1), to make nondischargeable only those taxes which became due and owing within three years prior to bankruptcy with certain exceptions.[8] The explanation of these amendments given in the House Report is particularly illustrative of the growing Congressional disfavor with the preferred treatment given tax claims under the Bankruptcy Act. Excerpts are set out in the margin.[9]

In sharp contrast to this continual downgrading of tax claims has been the equally pronounced trend toward insur-

7. "§ 93 Proof and allowance of claims

     \*     \*     \*     \*     \*

"(n) Except as otherwise provided in this title, all claims provable under this title, *including all claims of the United States and of any State or any subdivision thereof*, shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed * * * *."* (Emphasis added.)

8. "§ 35. Debts not affected by a discharge
"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy [with certain exceptions]."

One of the exceptions covers taxes "collected or withheld from others * * * but not paid over." This is an exception from a limitation on claims for pre-bankruptcy taxes which the Government must be able to trace in order to recover. However, we cannot find in this any support for the Government's position as to post-bankruptcy taxes which it seeks to recover not as taxes but as an administrative expense and which it is unable to trace into any property remaining in the bankrupt's estate.

9. "[T]here is no time limit under present law on the priority accorded taxes.
"The result has frequently been that tax collectors, assured of a prior claim on the assets of a failing debtor and assured of the nondischargeability of uncollectible tax claims, have allowed taxes to accumulate and remain unpaid for long periods of time. With the proliferation of new taxes and the increased rates of old taxes, often little or nothing is left for distribution to general creditors who provided goods and services to the bankrupt.

"The committee has received hundreds of letters from business firms all over the country complaining about this situation. Although a creditor can protect himself to some degree by requiring periodic financial statements from the bankrupt, there are cases in which the true extent of tax liability may not be known, even to the debtor, as where there are unsettled accounting or legal questions. Nor is a creditor protected from a dishonest debtor who issues a false statement of his tax liability. While this may result in barring the debtor's discharge, the Government still has a tax priority which may be large enough to preclude the creditor's participation in the distribution of the debtor's assets. *Ultimately, however, the issue would appear to resolve into whether the Government as a creditor should bear part of the economic burden of business failures through the loss of some of its tax claims* which it has allowed to accumulate over a long period of years.

     \*     \*     \*     \*     \*

"The unlimited priority now enjoyed by taxes in bankruptcy proceedings in the United States is inconsistent with the practice in most commercial countries." H.R.Rep.No. 687, 89th Cong., 1st Sess. (1965). (Emphasis added.)

ing the payment of administrative expenses.

Until 1926 claims for administrative expenses had been subordinate to tax claims. *See* 3A Collier on Bankruptcy 2046–48 and 2155–56, and Bankruptcy Acts of 1800, 1841, 1867 and 1898. In that year, they were placed ahead of taxes in the priority scheme. Act of May 27, 1926, 44 Stat. 662. However, the trustee's "costs and administrative expenses" were still subordinate to claims of the referee and of creditors for costs of preserving or recovering assets. *See* 3A Collier on Bankruptcy 2051–52. The 1938 Act included "costs and expenses of administration" in the first category of priorities so that they would have a *pro rata* first priority claim to the estate along with the two items that had preceded them prior to 1938. Act of June 22, 1938, 52 Stat. 883. In 1952 the Act was amended to give priority to administrative expenses of an ensuing bankruptcy proceeding over unpaid administrative expenses of a superseded proceeding. Act of July 7, 1952, 66 Stat. 426. This amendment clearly illustrates Congressional reasoning in preferring administrative expenses to all others. As stated in the Senate Report:

"Unless provision is made for payment of the costs and expenses necessary to liquidate, administer and close the estate in the ensuing bankruptcy proceeding, ahead of all prior incurred and unpaid administration costs and expenses, there is always danger of a breakdown of administration. There should be assurance to the trustee in the ensuing proceeding that the costs and expenses incurred by him, such as bond premiums, insurance premiums, costs of conducting a public sale and compensation for his services and for the services of his attorney, will be paid out of the assets liquidated and administered by him ahead of the prior unpaid costs and expenses." Sen.Rep.No. 1395 on S. 2234, 82d Cong., 2d Sess., p. 4 (1952).

These statutory developments indicate both a growing recognition in the Congress of the inequity of extending to the Government extraordinary preferences over other creditors when a taxpayer-debtor experiences financial failure and also a growing realization of the fact that sound bankruptcy administration for the benefit of creditors and Government alike depends upon insuring payment of the expenses necessarily incurred in such administration.

■  The Section 7501(a) trust fund theory advanced by the Government would subvert both of these strong bankruptcy policies. For that reason, we hold that even if Section 7501(a) is construed to create the super priority urged by the Government, it is overridden by the strong policies evidenced in Section 64(a) of the Bankruptcy Act.

In sum, we hold that when Section 7501(a) of the Internal Revenue Code and Section 64a(1) of the Bankruptcy Act are construed in light of the underlying policies, they do not conflict. The trust fund created by the former statute is, by the terms of that statute subject to the limitations imposed by the latter statute. Further, we hold that even if we accept the Government's theory that Section 7501(a) creates a preference for post-bankruptcy tax claims higher than that accorded them by Section 64a(1), that preference is overridden by the strong bankruptcy policies reflected in Section 64 and in the legislative development of that statute to its present form. We find such a result consistent with the treatment by the Supreme Court of analogous questions in such cases as *Guarantee Title, Pringle, Ross* and *Nicholas*.

For the foregoing reasons, the memorandum order of the district court appealed from herein is affirmed.

Affirmed.