In re Francis Joseph CARR and Margaret B. Carr, Bankrupts.

**SECURITY BANK AND TRUST COMPANY OF LAWTON, OKLAHOMA, and Newcombe and Redman, Inc., Plaintiffs-Appellants,**

v.

**Francis Joseph CARR, and Margaret B. Carr, Defendants-Appellees.**

Bankruptcy Nos. BK–77–00575, BK–77–00576.

United States District Court, W. D. Oklahoma.

June 30, 1980.

Manville Redman, Lawton, Okl., for plaintiffs-appellants.

Charles B. Lutz, Jr., Oklahoma City, Okl., for defendants-appellees.

DAUGHERTY, Chief Judge.

This is a proceeding under Chapter XII of the Bankruptcy Act, 11 U.S.C. §§ 801–926, wherein the Security Bank and Trust Company of Lawton, Oklahoma (Bank), and its attorneys, Newcombe and Redman, Inc., appeal from the Bankruptcy Court's "Order on Remand" filed herein on December 20,

1979. An earlier appeal had been taken by the Appellants from the Bankruptcy Court's order of January 12, 1979, wherein this Court remanded the case to the Bankruptcy Court for clarification on October 4, 1979. It is asserted that this Court has jurisdiction over this action pursuant to 11 U.S.C. § 67(c). This appeal is taken in conformity with Rules 801–814, Rules of Bankruptcy Procedure, which are made applicable to Chapter XII cases by Rule 12–61, Rules of Bankruptcy Procedure.

In its "Order on Remand" clarifying the questions raised by this Court in its order of October 4, 1979, the Bankruptcy Court made the findings summarized below:

1. The attorney fee of $2,500.00 awarded to Newcombe and Redman, Inc. was awarded in connection with the Chapter XII proceedings only.

2. The claim of Newcombe and Redman, Inc. for attorney's fees under the various mortgages and promissory notes was denied as a modification or alteration of the rights of the Appellants and because Newcombe and Redman, Inc. presented no evidence in support of their claim for said fees when asked to do so by the Bankruptcy Court.

3. The interest on the various mortgages and promissory notes, totaling $65,888.17, awarded to the Bank represented the accrued interest on said notes terminating on September 11, 1978.

4. The Bankruptcy Court allowed the Bank's amended claim for interest by extending the accrual of such interest to September 11, 1978. However, the rate of interest was at the original rate stated in each note and not at the maximum rate allowed by law.

5. The modification of the plan to allow Bankrupts to sell or mortgage their second piece of property to pay administrative expenses of $50,000.00 was done pursuant to Rule 12–39, Rules of Bankruptcy Procedure, at the request of Bankrupts. Said modification did not affect the interest of Appellants.

Rule 806, Rules of Bankruptcy Procedure, requires an appellant to designate the issues to be presented on appeal. Accordingly, the Appellants have so designated the following issues in their "Statement of Issues Intended to be Presented on Appeal" filed herein on January 16, 1980:

1. That the Bankruptcy Court erred with respect to the amount of attorney's fees ($2,500.00 and no expenses) that it granted and awarded to Newcombe and Redman, Inc. as attorneys for the first priority secured creditor, the Security Bank and Trust Co., in representing the said bank throughout these bankruptcy proceedings and in collecting the amount due on promissory notes of the bankrupts, especially as compared with the attorney's fee ($32,450.00 plus expenses of $1,326.28) awarded to the attorneys for the bankrupts.

2. That the Bankruptcy Court erred in failing to include as a part of the amount of money due to the Security Bank and Trust Company its claim for the fee of its attorneys in collecting the promissory notes of the bankrupts and pursuing in Court a real estate mortgage foreclosure action on its behalf against the bankrupts.

3. That the Bankruptcy Court erred in altering or modifying the accepted and confirmed plan of arrangement by eliminating the right of the Security Bank and Trust Company to attorney's fees and collection costs under the terms of the promissory notes and mortgages of the bankrupts, since there was no request for such modification, and such alteration or modification materially and adversely affected the Security Bank and Trust Company, and no notice was given to said bank of any proposed alteration or modification.

4. That the Bankruptcy Court erred in the date to which it computed interest due to the said bank, having computed interest to September 11, 1978 rather than to December 19, 1978, the date when the principal amount due on the promissory notes was paid to said bank.

5. That the Bankruptcy Court erred in altering or modifying the accepted and confirmed plan of arrangement by changing the date to which the Security Bank and Trust Company was entitled to collect interest under the terms of the promissory notes and mortgages of the bankrupts since there was no request for such modification, and such alteration or modification materially and adversely affected the Security Bank and Trust Company, and no notice was given to said bank of any proposed alteration or modification.

6. That the Bankruptcy Court erred in computing the amount of interest due to the said Security Bank and Trust Company in that the Court did not properly interpret the promissory notes, mortgages, interest increase agreements and deferment statements executed by the bankrupts, or if the Court did properly interpret such instruments, then it erred in altering or modifying the accepted and confirmed plan of arrangement by changing the provisions of said instruments without any requests to do so, and such alterations or modifications materially and adversely affected the said bank.

7. That the Bankruptcy Court erred in altering or modifying the accepted and confirmed plan of arrangement by permitting the bankrupts to mortgage or sell their remaining real property since there was no request for such modification or alteration; such alteration or modification materially and adversely affected the Security Bank and Trust Company since the amount of money due it under the terms of its promissory notes and mortgages was not paid; and no notice was given to said bank of said proposed alteration or modification.

8. That the Appellants contend that the amount of interest owed on the promissory notes of the bankrupts in accordance with the terms and provisions of the promissory notes and the real estate mortgages as of December 19, 1978 totals One Hundred Eighty Thousand Five Hundred Seventy-Seven Dollars Seventy-Seven Cents ($180,577.77), wherein the Bankruptcy Court only allowed an amount of Sixty-Five Thousand Eight Hundred Eighty-Eight Dollars Seventeen Cents ($65,888.17); and, that the said Security Bank and Trust Company should be awarded the sum of Twenty-Six Thousand One Hundred Seventy Dollars ($26,170.00) plus court costs in the amount of Eighty-Nine Dollars Thirty-Four Cents ($89.34) for the fee of their attorneys and collections costs, for the mortgage foreclosure proceedings, and Newcombe & Redman, Inc. should be awarded an attorney fee of Twelve Thousand Six Hundred Thirty-Six Dollars ($12,636.00), plus a reasonable fee for their appeals in this matter, as and for their fee for representing said bank in this Bankruptcy proceeding.

The briefs of the parties filed in connection with this appeal have divided the foregoing issues into three general areas: (1) attorneys fees; (2) interest; and (3) modification of the confirmed plan. The court will examine each of these areas seriatim. However, the Court notes at the outset that the Bankruptcy Court should be affirmed unless its findings are found to be clearly erroneous. Rule 810, Rules of Bankruptcy Procedure.

### (1) ATTORNEY'S FEES
#### Chapter XII Proceedings

■ The Bankruptcy Court awarded Newcombe and Redman, Inc. $2,500.00 attorney's fees for their services rendered in the Chapter XII proceedings. Appellants contend that this amount should have been $12,636.00 and assert that their fee should be greater than the amount awarded as the Bankrupts' attorneys received $32,450.00 in fees for their work in the Chapter XII proceedings.

The award of attorney's fees in a Chapter XII proceeding is governed by Rule 12–28(a), Rules of Bankruptcy Procedure, which reads:

(a) *Factors in Allowing Compensation.* Reasonable compensation and reimbursement of necessary expenses *may be allowed by the court* to the trustee and his attorney, the attorney for the debtor in possession, the attorney for the debtor,

and such other persons as may be authorized to assist the trustee or debtor in possession, and to creditors, committees or representatives of creditors, indenture trustees, depositaries, reorganization managers, and any other parties in interest and the attorneys or agents for any of them, *for services which contribute to a plan which is confirmed or to the confirmation of a plan, and for services rendered in opposing a plan confirmation of which has been refused, and for services in connection with the administration of the estate under Chapter 12 of this title.* (Emphasis added)

In this regard the Bankruptcy Judge has discretion to allow compensation for services and expenses rendered in connection with the administration of the estate. Whether the services rendered were of any worth in the administration of the estate is a matter to be determined by the Bankruptcy Judge. *Securities Service Corp. v. Belcrest Apartments Co.,* 130 F.2d 987 (Sixth Cir. 1942). The issue before this Court is not whether the fees awarded should have been fixed in a larger amount, but rather whether the findings of the Bankruptcy Court are clearly erroneous. *Levitt v. Robinson,* 402 F.2d 753 (Ninth Cir. 1968).

In the instant case the $2,500.00 awarded by the Bankruptcy Court to Newcombe and Redman has not been shown to be clearly erroneous and therefore must be affirmed. Rule 810, *supra.*

## Mortgage Foreclosure

Appellants assert that the Bank is entitled to the attorney's fees fixed by the various mortgages and promissory notes involved herein. Under the terms of the six mortgages involved in this case, the Bank was entitled to the following amounts as attorney fees upon the filing of the petition for foreclosure, and these fees were to be "a further charge and lien" upon the premises described in the mortgages:

1. $5,000.00;
2. $12,500.00;
3. Reasonable amount with a minimum amount of $280.00;

4. Reasonable amount with a minimum amount of $280.00;
5. Ten percent (10%) of unpaid balance or $250.00 (Unpaid balance was $12,-500.00);
6. Ten percent (10%) of unpaid balance or $250.00 (Unpaid principal balance was $68,600.00).

The Bank instituted foreclosure proceedings against the Bankrupts in the Comanche County District Court on November 11, 1976. However, the foreclosure proceedings were never completed as the instant Chapter XII proceeding was commenced on April 5, 1977, and stayed the foreclosure proceedings. The six promissory notes involved herein also contain provisions for attorney's fees upon default. Bankrupts objected to these fees when they were claimed by Appellants. In this connection the Bankruptcy Court asked Appellants to present evidence in support of their requested fees. However, no evidence was presented and the Bankruptcy Court denied the fees requested for the foreclosure proceeding as a modification or alteration of the rights of creditors.

The validity of a secured obligation to pay attorney's fees is a question to be decided under state law. *See Security Mortgage Company v. Powers,* 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928); *In Re Bain,* 527 F.2d 681 (Sixth Cir. 1975). Under Oklahoma law a party for whom judgment is rendered in a foreclosure action is entitled to a reasonable attorney's fee regardless of the provisions in a mortgage allowing such fees. *See generally Mid-State Homes, Inc. v. Johnston,* 547 P.2d 1302 (Okl.1976); *Bamberger v. Dollar Savings Bank,* 396 P.2d 1013 (Okl.1964); *Federal Land Bank of Wichita, Kan. v. Denson,* 172 Okl. 225, 44 P.2d 891 (1935).

It is also well established, however, that the Bankruptcy Court has the power to alter or modify the rights of secured creditors in a Chapter XII proceeding. 11 U.S.C. § 861; *In re Colonial Realty Investment Co.,* 516 F.2d 154 (First Cir. 1975). The decision to deny a stipulated attorney's fee,

while granting leave to prove the reasonable value of legal services rendered prior to the date of the filing of a petition in bankruptcy, is within the equitable power of the Bankruptcy Courts. *American National Bank of Sapulpa, Oklahoma v. Bartlett*, 40 F.2d 21 (Tenth Cir. 1930) (construing Oklahoma law). In the instant case, the Bankruptcy Court modified the rights of Appellants as to the stipulated attorney's fees, but allowed Appellants an opportunity to prove a reasonable attorney's fee for their work in the foreclosure action. Appellants declined to present any evidence when requested to do so. Therefore, the Bankruptcy Court had no evidence before it from which to determine a reasonable fee. Under these circumstances, the Bankruptcy Court's denial of the claimed fees was not clearly erroneous.

## (2) INTEREST

### Date of Termination

Appellants contend that the accrual of interest on the notes in question should have been terminated on the date the principal was paid (December 19, 1978) and not on the date the sale of Bankrupts' property was confirmed (September 11, 1978).

 As a general rule in bankruptcy proceedings interest on a debtor's obligations ceases to accrue when the petition is filed. *Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *In re Romero*, 535 F.2d 618 (Tenth Cir. 1976). Post-petition interest, however, may be allowed in a Chapter XII proceeding until consummation of the plan for arrangement when the instrument creating the security interest provides that the security applies to the income as well as to the assets in question and the assets generate income, or when the value of the security exceeds the principal amount of the claim. *See generally In re Black Ranches, Inc.*, 362 F.2d 8 (Eighth Cir. 1966), *cert. denied*, 385 U.S. 990, 87 S.Ct. 595, 17 L.Ed.2d 450 (1966); *United States v. Kalishman*, 346 F.2d 514 (Eighth Cir. 1965), *cert. denied*, 384 U.S. 1003, 86 S.Ct. 1913, 16 L.Ed.2d 1003 (1966); *Castaner v. Mora*, 234 F.2d 710 (First Cir. 1956); *In re Penn Central Transportation Company*, 358 F.Supp. 154 (E.D.Pa.1973); *In re Schindler*, 223 F.Supp. 512 (E.D.Mo.1963); *see also* Annot., *Claim in Bankruptcy as Bearing Interest After Filing of Petition Where There is a Surplus*, 27 A.L.R.2d 586 (1953). These exceptions, however, are not rigid doctrines to be followed in all cases. *In re Penn Central Transportation Co., supra.* The reorganization court must consider the issue of post-petition interest in light of the nature of each claim and the application of basic principles of fairness and equity. *In re Penn Central Transportation Co., supra; In re Leeds Homes, Inc.*, 222 F.Supp. 20 (E.D. Tenn.1963), *aff'd*, 332 F.2d 648 (Sixth Cir. 1964), *cert. denied*, 379 U.S. 836, 85 S.Ct. 71, 13 L.Ed.2d 43 (1964).

The bankruptcy court is allowed some discretion in the allowance of post-petition interest after said court has balanced the equities between creditor and creditor and between creditor and debtor. *In re Leeds Homes, Inc., supra.* Furthermore, the purpose of a Chapter XII proceeding is to restore and not dismantle the debtor. *In re Colonial Realty Investment Co., supra.*

 In the instant action the Bankruptcy Court balanced the equities and allowed post-petition interest up to the confirmation of the sale of Bankrupts' property, a period of more than one and one-half years after the filing of the petition. The Bankruptcy Court was able to work out a plan whereby the Bank could recover its entire principal plus interest to the date of confirmation of said sale; the other creditors would be paid; administrative costs would be paid; and the Bankrupts would be left with one tract of land which they originally started with. The Bankruptcy Court in this case was able to protect the creditors in large measure and leave the Bankrupts' estate partially intact. Therefore, it cannot be said that the order of the Bankruptcy Court was clearly erroneous.

## Rate of Interest

Appellants contend that the rate of interest should be the maximum rate allowed by law. The Bankruptcy Court allowed interest on the six notes in question at the rate of interest requested by Appellants in their "Statement of Amount Owing to the Security Bank and Trust Co. of Lawton, Oklahoma" dated September 21, 1978 and filed on September 22, 1978.[1] Appellants contend that the interest rate should be 45% per annum on two notes, 18% per annum on three notes, and 10% per annum on one note, as five of the notes specifically call for the maximum rate allowed by law[2] on default and one note calls for 10% on default.

■ As pointed out above, the purpose of Chapter XII is to restore and not to dismantle the bankrupt. *In re Colonial Realty Investment, Co., supra.* The bankruptcy court has the power to prevent a secured creditor from availing itself of the contracted remedies upon default so that a successful rearrangement of the bankrupts' affairs can be accomplished. *In re Colonial Realty Investment Co., supra.* If the enforcement of a higher rate of interest on default would produce an inequitable result it may be disallowed by the bankruptcy court. *See generally In re Colonial Realty Investment Co., supra; In re Black Ranches, Inc., supra.*

In the instant case allowance of the maximum rate allowed by Oklahoma law would have destroyed the Chapter XII arrangement. It would have called for an additional $114,689.60 in interest giving the Bank a windfall which was not contemplated at the time of contracting and defeating the purpose of Chapter XII proceedings. The Bankrupts would have been left without any of the property involved herein and the Bank would have gained almost three times the amount of interest originally contracted for. Thus, the disallowance by the Bankruptcy Court of the maximum legal interest rate protected the creditors' interests and fulfilled the purpose of Chapter XII proceedings. This disallowance was within the authority and judgment of the Bankruptcy Court, is not clearly erroneous and must be affirmed.

### (3) MODIFICATION OF THE PLAN

Appellants contend that the Bankruptcy Court committed error in altering the plan by permitting Bankrupts to mortgage or sell the remaining property to pay administration costs. Bankrupts moved that the plan be modified so as to allow them to retain one tract of land and still pay the principal and interest of their creditors and administrative costs. The Bankruptcy Court granted this modification pursuant to Rule 12–39, Rules of Bankruptcy Procedure. Rule 12–39 provides:

At any time prior to the acceptance of a plan by the requisite majority of creditors, a person filing a plan pursuant to Rule 12–36 may file a modification thereof. After a plan has been so accepted the person filing the plan may file a modification of the plan only with leave of the court. The debtor or such creditor may also submit with the proposed modification written acceptances thereof by creditors. *If the court finds that the proposed modification does not materially and adversely affect the interest of any creditor who has not in writing accepted it, the modification shall be deemed accepted by all creditors who have previously accepted the plan.* Otherwise, the court shall enter an order that the plan as modified shall be deemed to have been accepted by any creditor who accepted the plan and who fails to file with the court within such reasonable time as shall be fixed in the order a written rejection of the modification. Notice of such order, accompanied by a copy of the proposed modification, shall be given to the debtor, the

1. The Bankruptcy Court adjusted the amount of interest requested on each note to the amount owed through September 11, 1978.

2. Two of the notes in question were commercial in nature. Hence, the maximum legal interest rate would be 45%. *See* 14A Okla.Stat. 1971 §§ 3–605 and 5–107(2); *Barnes v. Helfenbein,* 548 P.2d 1014 (Okl.1976). Three of the notes were consumer notes and the maximum interest rate would be 18%. 14A Okla.Stat. 1971 § 3–602(2).

trustee, creditors, indenture trustees, and such other persons as the court may designate, at least 10 days before the time fixed in such order for filing rejections of the modification. The debtor or creditor shall, if required by the court, furnish a sufficient number of copies of the proposed modification to enable the court to transmit a copy with each such notice. (Emphasis added).

In the instant case, the Bank was paid its principal in full and interest to the date of confirmation of the sale of the Bankrupts' property. The Bank's interest was therefore not affected by the modification proposed by the Bankrupts. The Bankruptcy Court was correct in allowing the proposed modification even though the Bank had not accepted the proposed modification. Rule 12–39, *supra*.

## CONCLUSION

The findings of a bankruptcy court will not be disturbed unless there are "cogent reasons appearing on the record to reject" those findings. *Matter of Vickers*, 577 F.2d 683 (Tenth Cir. 1978); *Wolfe v. Tri-State Insurance Co.*, 407 F.2d 16 (Tenth Cir. 1969); *Kansas Federal Credit Union v. Niemeier*, 227 F.2d 287 (Tenth Cir. 1955); *In re Perdue Housing Industries, Inc.*, 437 F.Supp. 36 (W.D.Okl.1977). From the record herein, the Court is unable to conclude that the findings of the Bankruptcy Court are clearly erroneous or that cogent reasons appear which require this Court to reject those findings. Accordingly, the "Order on Remand" of the Bankruptcy Court is affirmed.